DowNey, Judge,
delivered the opinion of the court:
The plaintiff furnished lumber to the Puget Sound Navy Yard during 1917, for all of which it Avas paid at the prices named in a contract entered into between it and authorized representatives of the United States in February of that year. It seeks to recover in this action the difference between what it was paid and the alleged market value of all of said lumber in excess of 1,675,000 feet, the amount it alleges it was obligated to delix-er under the contract, if in fact it was obligated at all.
The contract, AArhich folloAved competitive bids after due notice, Avas the usual form of bureau contract for the procurement of needed supplies during a given period. The articles called for Avere about 1,675,000 feet of Douglas fir of such sizes or grades as might be ordered, and the contract contained the following clause:
“ It shall be distinctly understood and agreed that it is the intention of the contract that the contractor shall furnish and deliver any quantities of Douglas fir which may be ordered for the naval service at the place named during the period ending Dec. 31, 1917, irrespective of the estimated quantity named, the Government not being obligated to order any specific quantity of Douglas fir contracted for.”
The plaintiff first contends that this clause is void for want of mutuality, in that the United States was not obligated. Such a contention is not tenable. The purpose of the contract was to procure such lumber during a given period as, might be needed at a place where lumber had always been needed and Avhei’e, so far as human foresight could know, lumber would be needed during the period covered by the contract. The plaintiff, xvith former experience under such contracts, sought by its bid the right to supply such needs, its contract secured to it such rights, and they were enforceable thereunder. But however that may be, it is certainly too late for plaintiff to raise such a question after it has furnished under the contract all which, according to its construction, it was obligated to furnish and been paid therefor at the contract price.
*456 The question, then, is as to the construction of the contract and the plaintiff’s obligations thereunder. It contends that its obligation was limited to the furnishing of 1,675,000 feet of lumber. The defendant contends that plaintiff’s obligation was measured by the needs of the navy yard during the stated period.
There seems to be but little room for discussion. The plain purpose of the contract was to supply a need during the period named and not to furnish a specific quantity. The clause quoted is susceptible of no other construction. It is not attempted to show that plaintiff did not so understand it when it submitted its bid and entered into the contract. And in fact it is open to reasonable inference from the facts found that during the term of the contract the plaintiff itself at all times, recognized its obligation under the contract to supply the needs of the navy yard.
It is true that Mr. Scott, who was the agent of the plaintiff and also the manager of the Crown Lumber Company, undertook to limit the liability of the plaintiff under the contract to the furnishing of 1,675,000 feet of lumber, but it is equally true, according to his own testimony, that he did not then know of the provision in the contract quoted above, and it fairly appears that his position in the matter was contrary to that of his principal and entirely out of line with instructions given him.
Upon the execution of the contract the plaintiff issued to the Crown Lumber Company, some sort of a subsidiary of the plaintiff, an order to furnish the navy yard 1,675,000 feet of lumber, and this order came to Mr. Scott as the manager of the Crown Lumber Company for his attention. It is not in the record. We have not found whether it specifically limited the amount to be furnished to the quantity stated. Assume that it did. It is immaterial. It was an order by the plaintiff to one of its subsidiaries; the United States was in no sense a party and the liability of the plaintiff under its contract could not be limited thereby.
It was by letter of May 21,1917, that Mr. Scott first undertook to limit the liability of the plaintiff to 1,675,000 feet. Deliveries made and accepted orders then on hand exceeded that amount and he demanded the withdrawal of orders sufficient *457 to reduce the amount to 1,675,000 feet. His attention, was promptly called to the provision of the contract quoted above. With the orders sent by plaintiff to Mr. Scott as manager of the Crown Lumber Company no copy of the. contract had been sent and Mr. Scott did not know of the quoted provision. It must be assumed that he was interpreting the contract liability of the plaintiff by the terms of the order issued to the Crown Lumber Company, of which he was manager. Thereafter he accepted orders, indicating in most instances that the acceptance was under protest, especially as to delivery. And delivery dates seem to have been more a subject of controversy than anything else. But, rather peculiarly, while Mr. Scott is attempting to thus limit plaintiff’s liability, the plaintiff itself, although informed of Scott’s attitude, makes no such contention, but on June 18,1917, writes to the supply officer the letter set out in Finding Y, in which it, as it seems to us, clearly repudiates Scott’s position. While the position assumed by the plaintiff could not be determinative of the question of its obligation, the construction which is put upon the contract is strengthened, if in fact that was also the construction put upon it by the plaintiff.
But whether the contract obligated the plaintiff to the extent of the needs of the navy yard or only to the extent of 1,675,000 feet of lumber, the undisputed facts are that the defendant’s representatives construed plaintiff’s obligation as measured by the needs, irrespective of the estimated quantity stated, of which the plaintiff was fully informed, all orders were placed with direct reference to and under this contract, and the orders, except as withdrawn, were filled. If the plaintiff’s obligation under its contract was in fact to furnish 1,675,000 feet of lumber and no more, it would have been entirely within its rights, having furnished that amount, to refuse to furnish more. And having furnished additional quantities in compliance with orders specifically predicated on the contract it can not while complying with such orders create or preserve by so-called protests a right to additional compensation over and above the contract price. We have so held in the recent case of Willard, Sutherland & Co. v. United States, ante, p. 413; Gibbons v. United States, 8 Wall., 269.
*458 While not cited as necessarily precluding the plaintiff, it is for consideration that payments for all this lumber at contract price were accepted without protest, so far as the defendant was informed. It is said that the plaintiff accepted these as partial payments only, but the proof goes no further than to indicate either an unexpressed mental reservation oí-an afterthought.
Our conclusion is necessarily against any right of recovery by the plaintiff. The petition is dismissed.
Graham, Judge; Hat, Judge; and Campbell, Chief Justice, concur.
Booth, Judge, dissents.