Campbell, Chief Justice,
delivered the opinion of the court:
This case presents questions that are decided in Southern Pacific Co. case and Western Pacific R. R. Co. case, decided January 7, 1924, ante, pp. 36 and 67.. (See also Baltimore & Ohio R. R. Co. case, 52 C. Cls. 468, and Oregon-Washington R. R. & Nav. Co. case, 255 U. S. 339, 347.) It also presents a *130 distinct matter of defense not appearing in tlie cases mentioned. We might content ourselves with a reference to these decided cases, but the frequency with which the questions recur and the importance of a definite ruling upon them, so far at least as this court can make it, justify a restatement of what we regard as the controlling principles applicable to the class to which this belongs.
The plaintiff presented its bills to a disbursing officer and was paid the amounts claimed to be due on the face of the bills. They showed land-grant deductions. The plaintiff stated some of its bills at full commercial rates (without land-grant deductions) on one of the forms prescribed by the Comptroller of the Treasury for bills not involving-land grant, and the disbursing officer refused to pay the bills so stated. Thereupon the bills were restated upon the land-grant form prescribed by the comptroller, and they were paid. These restated bills had upon them when paid a stamped or typewritten statement to the effect that if the United States official “ auditing ” the bill declined to allow full tariff rates, claiming that land-grant rates or land-grant and western military agreement should apply, the plaintiff company would receive the reduced amount under protest, “ reserving its right to collect the balance.” It will be noted that this statement refers t-o the “ auditing ” official, though the bill on which it was stamped was presented for payment to a disbursing officer who is not an auditing officer and could only pay or refuse to pay a bill as stated. The statement therefore apparently has for its object the charging of some kind of notice upon some official who would subsequently handle the voucher, while the plaintiff Avould have received the only payment which the disbursing officer was authorized to make. After some time this practice of stating its bills on the one form and then restating them on the land-grant form when payment of the former was refused was abandoned by plaintiff, the practice being abandoned because “ the accounting work involved in the practice was burdensome and cumbersome ” to plaintiff, and it adopted the practice of rendering all bills for transportation of the chai-acter mentioned on the land-grant basis, using therefor the form prescribed for that purpose, accompanying the bill *131 in each instance with a statement to the effect that the bill was paid and payment received on the land-grant basis, but that the bill was stated in that form and payment accepted by the company under protest “ because of the refusal of the Government to consider a bill in any other form,” the contention of the railway company being “ that it was entitled to full tariff rates,” concluding with the statement, “ the railway company reserves the right to sue for the tariff rate.” These so-called “ protests ” being lodged with the disbursing officer the railway company received payment in full of the amounts claimed on the bills stated. It received and collected the disbursing officer’s checks and he held as vouchers the bills.he had paid. These vouchers he would subsequently present to the aiiditor as his acquittance for expending Government funds when his accounts should come on for settlement. Manifestly there was nothing of duress or compulsion inducing plaintiff to state its bills as they were stated. It was more convenient to present them at the place where a disbursing officer might be than to forward them to the auditor at Washington for direct settlement, but the statute (see Dockery Act, 28 Stat. 206) had authorized the auditors or the Comptroller of the Treasury to allow parts and disallow parts of a bill and at the same time made their action final and conclusive upon the executive branch of the Government. No statute had authorized disbursing officers to perform any such function. The duties of these officers are purely ministerial. They could only pay bills as stated and when stated on the prescribed form. To present a bill to such an agent with an accompanying statement that if he pay the bill as stated and certified to be due the amount would be accepted under protest, notwithstanding he could not pay at all without the required certificate of the accuracy of the bill, and then to assert that the bill itself is not correct and some sort of right is reserved by the “ protest ” is to produce two most incongruous conditions. To protest against the payment of a bill presented for payment and certified to be correct is unusual, and it is not infrequent that while a party protests he is entitled to more he yet accepts, payment of his bill. (See Chicago, Milwaukee & St. Paul Ry. Co. v. Clark, 178 U. S. 353, 364.) Such a “ pro *132 test ” is not availing to save any right inconsistent with the party’s action. A protest does not create a right. It may in proper circumstances preserve an existing one. A party can not avoid the legal consequences of his acts by protesting at the time he does them that he does not intend to subject himself to such consequences. International Contracting Co. v. Lamont, 155 U. S. 303, 310. We are unwilling to concede that the large number of disbursing officers or paymasters charged with the ministerial duty of disbursing Government funds, whose limited authority is well known, may by the receipt of such statements as accompanied the vouchers in this case pay parts of the bills and leave the balance for settlement in the courts, thus setting at naught the carefully framed system of Government accounting. Under such a practice the Government officials whose duty it is to know can hardly approximate the status of the Government’s accounts at any regular accounting period. For it is to be remembered that the disbursing officers’ payments are by no means confined to bills like those in the instant case. These officers pay many of the great supply bills of the Government. Forms for these are prescribed by the comptroller and approved by the Secretary of the Treasury (see 14 Comp. Dec. 945), and a rule applicable to the disbursing officers’ powers when dealing with the one kind is also applicable when he is dealing with the other kinds. We repeat, therefore, that the only proper rule is one that will recognize the disbursing officers’ limited authority and that will require a creditor of the Government who is unwilling to accept the payment by the disbursing officer as conclusive to follow the course provided by the statute or bring suit in a court of competent jurisdiction. It may be noted here that the statute (sec. 8 Dockery Act) will not allow a creditor to receive an auditor’s allowance and then apply for a revision by the comptroller. It may pertinently be asked whether a creditor receiving what he claims to be only part payment from a disbursing officer shall be accorded a greater right than the statute allows in the case mentioned. We think the policy of the statute should apply alike in both cases. It is not to be assumed that the plaintiff desired the Government official to exceed his authority or commit a breach of duty. *133 If it desired to insist upon its “ protest ” it should have insisted on its bill going forward for direct settlement. Its action in stating its bill -on the form used and then accepting payment from the disbursing officer is inconsistent with the claim now asserted. Not having pursued such a course, as could consistently with the accounting system have provided a remedy, it must be held that by accepting payment in the circumstances stated it waived any legal effect which could otherwise be accorded the so-called protest. (See Savage case, 92 U. S. 382; Sweeney case, 14 Wall. 75.)
Fuller discussions of the governmental accounting system appear in Southern Pacific Co. and Western Pacific R. R. Co. cases, both decided January 7, 1924, ante, pp. 36 and 67. We refer to these decisions and adhere to them.
2. This suit was instituted April 6, 1922. It seeks to recover a difference between what it claimed in the disbursing officer’s voucher was due and paid for and the amount it would have claimed at full tariff rates. The matters in question arose in 1917. In some of this class of cases the Government contends that the suit is barred by the statute of three years prescribed by section 424 of the transportation act of 1920, 41 Stat. 492. It provides that “ all actions at law by carriers subject to this act for recovery of their charges or any fart thereof shall be begun within three years from the time the cause of action accrues and not after.-” This is a new7 provision. Its terms apply to plaintiff as being a carrier subject to the act, and the action here seeks to recover what plaintiff claims is • a “ part ” of its lawful charges. The theory that this suit is not one to recover the carriers’ charges under the interstate commerce act, but is one upon an implied contract under the general jurisdiction of the court, does not property state the purpose of the suit. More aptly, one of the briefs for plaintiff states the theory of the suit to be that there is an implied contract on the part of the United States to pay what is the only known rate, the tariff rate. And if this be the correct theory, the plaintiff is suing to recover its charges, or part thereof, and is therefore barred by the limitation of three years. (See United States v. Baltimore & Ohio Railroad, 80 I. C. C. 143.)
*134 3. Another matter of defense is interposed. By a supplement to the Interterritorial Military Arrangement, the different railroad associations, one of which included the plaintiff, agreed to include in this arrangement the very class of persons involved herein. Under this arrangement the fares applicable were to be the lawful commercial fares on file with the Interstate Commerce Commission from starting point to destination at time of movement, less lawful land-grant deductions properly established, less five per cent. The supplemental agreement covered the period in question. Having entered into this arrangement voluntarily and been paid accordingly for the transportation, the plaintiff will not be heard now to question it.
The petition should be dismissed. And it is so ordered.
Graham, Judge; Hay, Judge; DowNev, J lodge; and Booth, Judge, concur.