Graham, Judge,
delivered the opinion of the court:
This suit grows out of several orders issued by the Navy Department to the plaintiff for the purchase and procurement of coal. The orders were accepted, the coal delivered, and the plaintiff paid in full' the price fixed in the orders. It is here claiming that its coal was requisitioned, and that it is entitled to the full market value of the same at export prices.
The plaintiff, at the time it received and accepted the orders, was engaged in business as a sales agent, purchasing the output of the mines of others and reselling to coal dealers and consumers without physically handling the coal. It, at the said time, owned no coal on the ground or at the mouth of the mine, nor did it own any mines. All the coal delivered was purchased by the plaintiff, and at the time of delivery was owned by the plaintiff.
At the time of the receipt of the orders the entire tonnage of coal which the plaintiff had previously contracted for had been disposed of under contracts in advance, and until some months thereafter.
On June 14, 1917, and thereafter plaintiff received orders at different times from the Navy Department for specified amounts of coal subject to the conditions in subparagraph (a) of said orders.
Subparagraph (a) is as follows:
“ The price herein stated has been determined as reasonable and as just compensation for the material to be delivered; payment will be made accordingly. If the amount is not satisfactory you will be paid 75 per centum of such amount, and further recourse may be had in the manner prescribed in the above-cited acts. Please indicate conditions under which you accept this order by filling in and signing certificate below, returning original copy of order. If you state the price fixed as reasonable is not satisfactory, 75 per cent only of the unit price will be paid. If payment in full is accepted it will be considered as constituting a formal release of all claims arising under this order.”
*643 The orders fixed a price per ton, and stated that this price had been determined “ as reasonable and just compensation ” for the coal to be delivered; that “ if payment in full is accepted it will be considered as constituting a formal release of all claims arising under this order ”; and that if the price stated was satisfactory the following clause at the bottom of the order should be signed:
“ The above order is accepted subject to the conditions in subparagraph (a). The price therein stated and fixed as being reasonable is satisfactory.”
This was signed in each case by the plaintiff.
The order also provided that in case the price fixed as reasonable was not satisfactory, 75 per cent of this price would be paid to the plaintiff. The orders stated that they were issued pursuant to the provisions of the acts of March 4, 1917, and June 15, 1917.
The plaintiff accepted the price named and payment in full, without protest or objection, for all coal delivered at the price stated in the respective orders, which was the domestic price.
In the case of the American, Smelting & Refining Co., 259 U. S. 75, 78, 79, it was held that an order for copper at a price fixed, and the acceptance of the order and the price fixed, was a contract, which precluded the vendor from recovering additional compensation. Justice Holmes, in delivering the opinion of the court, said:
“ * * * the petition is framed on the theory that there was no contract, but a requisition under the above-mentioned act of June 3, 1916, c. 134, sec. 120, and that the claimant is entitled to just compensation by that section and by the fifth amendment to the Constitution. This we hold to be a mistake.
* * * * *
“ But if it had desired to stand upon its legal rights it should have saved the question of the price. It did not do so, but on the contrary so far as appears was willing to contract and was content in the main with what was offered.”
In Nelson Co. v. United States, 56 C. Cls. 448, there was an order for the delivery of lumber in excess of the amount called for by the contract, the price stated in the order being the contract price, and, although protesting, plaintiff filled *644 the order and accepted payment. This court dismissed the petition. Chief Justice Taft, in delivering the opinion affirming this court (261 U. S. 17, 23, 24), said:
“ * * * this can not change the legal effect of its evident acquiescence seen in its letter of June 18th and its failure to protest thereafter and to put the Government on notice that it intended to claim a recovery on a quantum valebat when it was delivering the extra two million feet of lumber and receiving the payments therefor from the Government at the prices named in the bid.”
In the case of Willard, Sutherland & Co. v. United States, 262 U. S. 489, 494, where there was an order for coal in excess of the quantity provided for in the contract, the price fixed in the order being the contract price, and the plaintiff protesting filled the order and accepted payment, the judgment of this court dismissing the petition was affirmed. Justice Butler, in delivering the opinion of the court, said:
“ * * * it must be held voluntarily to have accepted the order for the additional 1,000 tons and to have furnished it at the price specified in the contract. Charles Nelson Co. v. United States, 261 U. S. 17.”
At the time of the passage of the act of March 4,1917, this Government was not at war, but was preparing for any emergency that might arise, and was at war at the time of the passage of the act of June 15,1917. The required method of advertising for bids and executing formal contracts necessarily involved delay. It was thought desirable to supplement this by another and a swifter method of purchasing and procuring supplies, and so a method was provided by these acts in addition to the methods authorized by sections 3709 and 3744 of the Revised Statutes. The President by these acts was authorized, “ in addition to the then authorized methods of purchase and procurement,” “ to place an order ” for materials with producers of such materials through such agencies of the Government as he saw fit; and in order to be sure that the desired materials would be promptly secured, and possibly as an incentive to acceptance and compliance with the order, it was further provided that, if the producer refused or failed to comply with the order, the President coul'd seize the materials or plant of the *645 producer. A taking was only to be resorted to in case of the failure or refusal of the party to accept or comply with the order.
As stated, the President could proceed to purchase by simply placing an order. But, further, it will be seen that it was contemplated that in placing the order he should name a price, and so the act provides that if the producer to whom the order is given shall “ refuse to furnish * * * at a reasonable price to be determined,” the President is authorized “ to take possession of his plant or materials.” The term “ reasonable price ” left the matter of purchase price to be offered discretionary with the President, as well as the terms and conditions upon which the goods were to be supplied, as also the form and substance of the order to be issued in each case.
Obviously, when an order was given under authority of these statutes for the purchase of materials, and the terms and price were fixed therein, and the price was accepted, or the order complied with and materials delivered without formal acceptance, there came into existence a valid contract under the authority of this statute, a contract which was enforceable in the courts and binding upon both parties.
These said two acts, in some minor particulars not pertinent to the question here, are different, but the authority of the President to make a legal contract by placing an order under certain terms and conditions without the formality of advertising for bids or formal contracts is the same, as is the purpose to secure by this method the purchase by contract of the materials and to make the acceptance of the order and the delivery of the goods, where no objection has been made to the price, a contract binding upon both parties.
As stated, the orders in this case fixed the price. It was accepted in writing as satisfactory, and the price named was paid and accepted.
The court in the Consolidation Coal Co. case, 60 C. Cls. 608, 270 U. S. 664, which was appealed to the Supreme Court and the appeal dismissed, and in the Pocahontas Fuel Co. case, 61 C. Cls. 231, where no appeal was taken, and in both of which the parties owned coal mines, held that similar orders to those in this case constituted contracts. In Ameri *646 can Smelting Co. v. United States, supra, Justice Holmes stated in the opinion:
“ No acceptance was necessary if the order was a compulsory requisition ” — that is to say, if it be merely an order intended to be accepted by the plaintiff, its acceptance or nonacceptance could not convert it into a requisition. If any significance is to be attached to the acceptance by the plaintiff of the order and price as satisfactory, it must be concluded that it did not regard it as a requisition, and it is evident that this was not the intention of the defendant.
As was stated in the American Smelting & Refining Co. case “ if it desired to stand upon its legal rights, it should have saved the question of the price. It did not do so, but, on the contrary, so far as appears, was willing to contract and was content in the main with what was offered.” Following what we concluded was the legal principle and logic of this opinion*, which was in accord with our construction of the meaning of the statutes, we held, as stated, in the Consolidation Coal Co. and Pocahontas Fuel Co. cases, supra, that the orders were contracts. And in line with the same principles we held in the Liggett &, Myers case, 61 C. Cls. 693, 274 U. S. 215, which involved an order for cigarettes, that it was a contract, but the Supreme Court reversed that case, holding that the order was a requisition, though not questioning the jurisdiction of this court. A few facts will serve to distinguish it from this case. That case was on a stipulation of facts, which did not contain the President’s order of August 9, 1917, giving authority to the Secretary of the Navy to proceed in the procurement of materials. It will be found in Finding Y in this case, and an inspection of it makes it plain that it is important in reaching a conclusion as to whether the orders under subparagraph (a) of the naval orders were, under the acts of March 4, 1917, and June 15, 1917, contracts or requisitions.
The order of the President is based upon and confined to the authority given him under these acts and contains the following language:
“ I hereby direct that the Secretary of the Navy shall have and exercise all the power and authority vested in him in said acts in so far as applicable to and in furtherance of the *647 production, purchase, and requisitioning of * * * war materials, equipment, and munitions required for the use of the Navy and the more economical and expeditious delivery thereof.”
The power conferred upon the Secretary of the Navy by the order of the President was only such power as was given him under the acts of March 4 and June 15, 1917 (Hooe case, 218 U. S. 322, and North American Co. case, 253 U. S. 330, 333), and the power given him under these acts was to place orders, and, on refusal to accept or comply with them, to seize the materials and operate the plant of the producer.
In the Liggett & Myers case the order was under sub-paragraph (b) of the naval order, which did not fix a definite price, but left for later determination the compensation; that is to say, that under subparagraph (b) the plaintiff’s consent to the price fixed was not sought as it was upder subparagraph (a). The court says in its opinion:
“ The plaintiff’s consent was not sought. It was not consulted as to quantity, price, time, or place of delivery.”
In the instant case, under subparagraph (a), the consent of the plaintiff was sought. It was asked to state whether or not the price fixed was satisfactory, and it did so state in signing its acceptance of the order. The acceptance of the order “ subject to the conditions ” was an acceptance of the quantity named and the time and place of delivery. The plaintiff could have refused to accept, and in that event it would receive 75% of the price. The acceptance of the price, which included an agreement to the other terms of the order, can not be said to have been a mere “ expression of purpose to obey,” for there was no compulsion in the acceptance. Plaintiff had no coal mines. It had nothing to be seized if it did not accept the orders when and as given.
Subparagraph (a), under which the orders in the present case were placed, and subparagraph (b), under which the orders in the Liggett & Myers case were placed, are in the findings.
One other distinction between this case and the Liggett & Myers case, assuming for the purpose that orders under sub-paragraph (a) were intended as requisitions to be enforced *648 if not complied with, under the acts of March and June, 1917, is that in that case the plaintiff owned a plant, and was engaged in the manufacture of cigarettes. Had it refused to accept the order the Government could have seized its plant. In this case the plaintiff was a mere broker and sales agent, securing coal for sale when and as it could obtain it, from mines and independent operators. There was nothing obligatory upon the plaintiff, no compulsion. There was nothing the Government could have seized under said acts (and the act of June 3, 1916, did not apply) had the plaintiff refused to comply with the orders. Clearly it could not have been the intention of the Navy Department to treat this order as a requisition.
There is another phase of the provisions of the act which precludes the contention that this was a requisition. The act provides for an order for war material “ which is of the nature and kind usually produced or capable of being produced by such individual ” — that is, the person to whom the order is given. This means, if it means anything, that the materials ordered must be of the kind which the person addressed manufactures and produces; that is to say, the act did not authorize the President to order cigarettes from a producer of coal, or coal from a manufacturer of cigarettes. So his power was limited to the material produced. The word “ produced ” here means manufactured, something brought into existence by some plan or method of transforming materials into a product.
The petition alleges that the plaintiff’s coal was requisitioned by the Government under certain orders issued by the Navy Department. There are three orders involved, one dated June 14, 1917, later becoming Navy Order N-77, one called Supplementary Navy Order N-77, dated September 22, 1917, and one called Navy Order N-3004, dated June 13, 1918. The deliveries under the first two of these orders were completed on or before June 29, 1918. Deliveries under the last order begun July 2,1918, were made at divers dates, and completed in June, 1919. The plaintiff claims that its coal was taken under the power of eminent domain and that it is entitled to have the highest market value of coal at the time and place of delivery. It has been paid the full price stated *649 in the several orders except where the prices were increased from time to time by the Fuel Administration, and in the latter case the full prices have been paid and have been received. In other words, the prices for domestic coal have been paid. The plaintiff asks export prices.
Whether there was authority in the officers issuing the orders to exercise the power of eminent domain, and whether having received the entire price fixed there should be a recovery of an additional amount, and whether, in the absence of action by the President, or the board authorized to do so, ascertaining the amount of just compensation, there is a right of action, are questions that were involved in the case of New River Collieries Co., decided by this court on April 2,1928 (ante, p. 205), and the discussion need not be repeated in this case, which is weaker, in some aspects, than was the case just mentioned.
Plaintiff waited more than six years after it had accepted the order, as stated, before this suit was brought on February 23, 1924, and it waited more than six years after it had delivered more than 40,000 tons of the coal called for before bringing suit. The entire amount called for was delivered five years and eight months before this suit was instituted. The acceptance of the order, the expression of satisfaction with the price, the acceptance of the entire amount based on that price, conclusively bar the present claim. But the plaintiff insists that subparagraph (a) was modified and a refinement is indulged in as to the meaning to be ascribed to the modification. It accepted, however, the price stated in sub-paragraph (a) and was actually paid that price. If there had been a reduction of the price and the reduced sum had been offered there would be more merit in the contention. There can be no merit in it when so belatedly asserted. As heretofore explained, no such case as here presented was considered in the Liggett & Myers Tobacco Co. case, 274 U. S. 215, 61 C. Cls. 693.
Navy order N-3004 covered the period from July 1, 1918, to June 30, 1919, and it was accepted with a statement that “ the price fixed is satisfactory.” The full amount was paid to and accepted by plaintiff, but the latter claims that sub- *650 paragraph (a) was modified. The modification did not alter the effect to be given the acceptance of the price fixed as satisfactory, whatever may have been the effect of an attempted reduction of the price stated. The acceptance of the full amount of the stated price — -that is to say, the acceptance of 100 per cent instead of 75 per cent — has an important bearing on the right of the recipient to maintain a suit for an additional sum, and in any event will defeat such right, whereas in this case the price was agreed to, was accepted without protest, and no complaint was made- for so long a time as the record discloses. The mere acceptance of the 100 per cent is not sufficient to defeat the jurisdiction of a court. Houston Coal Co. case, 262 U. S. 361. But such acceptance does affect the merits of the case. McNeil & Sons case, 267 U. S. 302, and White Oak Coal Co. v. United States, 15 Fed. (2d) 474. In this last-named case the court says (p. 477):
“ Under the law, as well as under the offer of the Government, plaintiff was entitled to the full amount of the price fixed, only in the event it was accepted in full satisfaction. It had the right to decline the Government’s offer and sue for the value of the property taken, if it desired to do so, but in that event it was entitled, not to the full amount of the price fixed, but only 75 per cent thereof. It obtained the full price by accepting the offer, certifying the price fixed as satisfactory, and rendering invoices, not for 75 per cent, but for the full price, which it accepted without protest. Even if the contract feature of the case be ignored, plaintiff can not recover. It voluntarily elected to pursue one of two inconsistent remedies as a means of obtaining compensation for its property. Having obtained benefits thereby which it could not otherwise have obtained, it is estopped from pursuing the other remedy.”
There could be no requisition or taking of the coal except by virtue of the orders. There is not a particle of proof of any authority in any officer or agent of the Government to take plaintiff’s coal, if we leave out of consideration the three orders and the acts on which they were predicated. Affirmative proof of the power to take must appear. See Hooe case, 218 U. S. 322, 336; North American Co. case, 253 U. S. 330, 333. If, on the other hand, there was. a taking *651 under the statutes mentioned in the orders, then it is plain that plaintiff has not followed these statutes in the assertion of its claims. It has not only departed from their provisions in its acceptance of 100 per cent of the prices stated, but it concedes that no other action has been taken by the President or other authorized agency toward determining the just compensation which the acts recognize. If it be said the price was determined in the orders themselves, the answer is that that price was declared satisfactory by the plaintiff and received in full. If something more was necessary to be done by the President or other agency, it has not been done, nor has plaintiff asked that such action be taken. It has acquiesced for years. It asserts in its brief that “ when its property was taken it did not have the immediate right to go to the Court of Claims,” and must first have just compensation determined by the President, citing United States v. Taylor, 104 U. S. 216, United States v. Cooper, 120 U. S. 124. We think that a substantial compliance with the procedure provided in the statutes is essential in such case. But under another phase of the case plaintiff asserts that it “ was not entitled to sue until May 14, 1922.” This date is apparently adopted as the date when the President’s power expired under the act of June 15, 1917. This assertion is predicated on the provision of the act, 40 Stat. 183, terminating authority under it at the end of six months after the final treaty of peace. But the act of June 5, 1920, 41 Stat. 988, expressly repealed the act of June 15, 1917, subject to certain exceptions, one of which was that it conferred on the United States Shipping Board, instead of the President, the “ powers and duties relating to the determination and payment of just compensation.” If, therefore, it be true, and plaintiff apparently concedes it is true, that action by the President under the statutes was a condition precedent to its right of action, the statute continued that same power in a board which has not acted and has not been applied to for action, and because thereof there is still a bar to the suit. The plaintiff insists that no part of its claim is barred by the six-year statute of limitations, notwithstanding the first order was issued in 1917 and entirely complied with by de *652 liveries more than six years before suit was brought, which was in February, 1924, and the second order was issued and very largely complied with more than six years before suit was brought, and assigns as the reason for this contention that the necessary action by the President toward determining compensation had not been taken. If the reasoning is good to prevent the running of the statute of limitations, it is equally potent to prevent a suit.
Our conclusions may be summarized as follows:
1. That there was a contract; that plaintiff was paid the contract price and can not recover more than that price;
2. If these orders are treated as requisitions, then—
(a) That the plaintiff was not a producer of coal, owned no plant or mine, possessed no available coal at the time of the receipt of the orders, and was not a person to whom the requisition could or would be issued by the Secretary of the Navy under the authority of the acts named in the order, or the order of the President under said acts.
(b) That the acts enjoin certain necessary procedure, and that if the orders were obligatory upon it, the plaintiff has not pursued the course required by said acts and can not avail itself of them in this proceeding. See New River Collieries Co. v. United States, decided by this court April 2, 1928, ante, p. 205.
(c) That the claim is barred by the statute of limitations, and
(d) That the court is without jurisdiction. If the material was appropriated for public use, the taking must have been under section 10 of the Lever Act. United States v. New River Collieries Co., 262 U. S. 341, 343; United States Bedding Co. v. United States, 266 U. S. 491, 493; Atwater Co. v. United States, 215 U. S. 188, 191; White Oak Coal Co. v. United States, 15 Fed. (2d) 414 (certiorari refused).
The petition should be dismissed, and' it is so ordered.
GreeN, Judge; Moss, Judge; and Booth, Chief Justice, concur.