Graham, Judge,
delivered the opinion of the court:
On July 28, 1923, the plaintiff filed its original petition in this case claiming a sum of money, with interest, as just compensation for the commandeering of two of its steamships, the Chesapeake and Manna Hatta. It filed an amended petition on April 28, 1925, setting up a further claim for consequential damages to its business by the taking of the two said ships and also for loss on the sale of a companion ship known as the Baltimorean.
The plaintiff claims that the United States requisitioned or commandeered the two said ships, secured possession of them, and held possession of them by this means. The de *501 fendant claims that, while the original proceedings were requisition proceedings, the President fixed a sum as just compensation which the plaintiff accepted, and in pursuance of such acceptance executed to the defendant formal bills of sale for each of the vessels, and that the Government thus secured said vessels by contract for a given price, which price it has paid. It is plain that if the contention of the Government is valid, the claim set up in the amended petition for consequential damages falls to the ground.
The requisition order dated August 26, 1918, was from the Secretary of the Navy and stated that the President had directed him by virtue of the power and authority vested in him by the act approved June 15, 1917, to acquire the vessels Chesapeake and Manna Hatta for the Navy by purchase, and authorizing the plaintiff to appear before the board appointed for the purpose and present any evidence it might desire for consideration in determining the amount of compensation, giving the address of the board. Thereafter the plaintiff appeared and presented evidence of the value of the vessels. On October 31, 1918, the Acting Secretary of the Navy informed the plaintiff that the President had determined as just compensation for the acquisition of the two vessels the sum of $175,000 each, and stated:
“ The commandant of the third naval district has been ordered to pay you, upon proof of ownership, should the condition of said vessels be the same as when inspected, the sum of one hundred and seventy-five thousand ($175,000) dollars for each vessel. * * * also * * * to pay to you * * * the value of ordinary consumable stores on board at time of delivery.”
On November 18, 1918, the plaintiff notified the Secretary that the price fixed as compensation was not satisfactory to it, and that it desired to accept 75% of the amount and pursue its claim for such additional sums as would amount to just compensation. The Navy Department on November 30, 1918, replied to this letter, mentioning the statement therein that the price fixed was unsatisfactory, and stated that this being the case it was essential before the payment of the 75% that the department should be furnished an original and duplicate deed of transfer to the United States *502 in the case of each of said vessels, and that when these deeds were received an order would be issued for the payment of 75%.
Thereafter, on December 10, 1918, the plaintiff’s board of directors met and the president stated that the object of the meeting was to give reconsideration to the decision heretofore made by the board not to accept the award of the appraisal board for the Chesapeake and Manna Hatta, but to take 75% of the award and proceed in the Court of Claims for the balance of the price which the board believed the vessels to be worth, and that in his opinion, after consulting with other stockholders, it was advisable to accept the award of the appraisal board and proceed in the Court of Claims “ for consequential damages caused by the necessary discontinuance of the line,” and after discussion the following resolution was adopted:
“ Resolved, That John Monks, president, and B. R. Roome, secretary and treasurer, of this company, or either of them, be, and they hereby are, authorized and directed to execute and deliver to the commandant of the third naval district bills of sale to the United States of the steamers Chesapeake and Manna Hatta for $175,000 each; also to execute and deliver in the name of the company any and all other papers that may be necessary to transfer these vessels to the United States, and receive payment for same. * * * ”
On the same day the plaintiff addressed a letter to the representative of the department, which was as follows:
“ Referring to our letter of November 18, in which we advised you that the award of the appraisal board of $175,000 for each of these vessels was unsatisfactory, and that we desired to be paid the percentage of the amount determined and proceed under the act under which the vessels were acquired by or for the Government. This is to advise you that at a meeting of the board of directors of this company held this day it has been decided to accept the award of the Government in this matter and not to proceed as originally intended, and as we advised you we would in our letter above referred to. We are now preparing bills of sale covering each vessel for presentation to you, and will be obliged if you will advise us if any other action on our part in connection with securing the award is required by
*503 On or about December 11, 1918, the plaintiff executed and delivered to the defendant bills of sale of the two vessels and on January 13, 1919, received the defendant’s checks for $352,481.39, being 100% of the award, or the sum fixed by the President and offered as compensation for the vessels, and an additional sum of $2,481.39 for consumable stores on board. So far as the findings show, nothing further was done, no protest was entered at the time of the acceptance of the checks, nor was anything further heard of the matter until April 8, 1920, when the plaintiff addressed a letter to the Secretary of the Navy claiming that the value of the ships was nearly twice the amount that had been awarded, and expressing the hope that a statement of the facts would dispose the Secretary to aid it in securing just compensation for the loss of the property.
Thereafter nothing was done in the matter until suit was brought in this court, as stated, on July 28, 1923.
It will thus be seen that the plaintiff after expressing dissatisfaction with the compensation offered decided at the meeting of its board of directors on December 10, 1918, on the advice of its president, to withdraw from that position and to accept the 100% of the amount offered and proceed in the Court of Claims “ for consequential damages caused by the necessary discontinuance of the line ” which, of course, would not involve the value of the two ships. The resolution heretofore quoted authorized its officers to execute and deliver bills of sale to the United States and any other papers that might be necessary “to transfer these vessels to the United States, and receive payment for same.” On the same day plaintiff wrote to the representative of the Government referring to its letter of November 18, 1918, in which it said that the price was unsatisfactory, and that it desired to be paid the full amount determined, that at a meeting of the board of directors held that day it had been “ decided to accept the award of the Government in this matter, and not to proceed as originally intended, and as we advised you we would in our letter referred to ” — that is, November 18,1918 — and that “ we are now preparing bills of sale covering each vessel for presentation to you,” and ask *504 ing if any other action on its part in connection with securing the award was required by the Government. Thereafter, after executing the bills of sale, plaintiff on January 13,1919, was paid the full amount of compensation fixed by the President, without protest or reservation.
Thus it is clear that, after expressing dissatisfaction, it withdrew that expression and decided to accept the amount offered, stating that it had changed its mind and offering to prepare the necessary bills of sale for the transfer of the vessels, and thereafter prepared the bills of sale, delivered them, and received the amount agreed upon. This court has repeatedly held that a transaction of this kind, where there has been an offer, a voluntary acceptance of the offer, and a receipt of the money and delivery of the goods, is a contract. This case is noticeably strong, for the reason that after expressing dissatisfaction with the amount offered and a purpose to take 75% and sue for the balance, it voluntarily withdrew the objection, notified the Government to this effect, stating that it had concluded to accept the amount offered, expressing a willingness to execute the necessary bills of sale and do such other acts as would enable it to secure payment of the amount fixed, and thereafter executed the bills of sale and received the sum agreed upon.
It might be said in passing that this case is easily distinguished from the case of Thompson et al. v. United States, 62 C. Cls. 516, relied upon by the plaintiff, which was based upon the fact that plaintiff had expressed dissatisfaction with the award and had not withdrawn it before receiving the amount of the award, and did not withdraw it at the time nor give any receipt in full. Numerous cases have been decided by the Supreme Court, this court, and other Federal courts upholding the position that the facts recited, show a contract. American Smelting & Refining Co. case, 259 U. S. 75; Pacific Mail Steamship Co. v. United States, 59 C. Cls. 246, 248; Consolidation Coal Co. v. United States, 60 C. Cls. 608, 270 U. S. 664; Pocahontas Fuel Co. v. United States, 01 C. Cls. 231; Alcock & Co. v. United States, 61 C. Cls. 312, 325; Penn Chemical Co. v. *505 United States, 63 C. Cls. 15, 26; New River Collieries Co. et al. v. United States, 65 C. Cls. 205 (certiorari denied October 15, 1928); William C. Atwater & Co., Inc. v. United States, 65 C. Cls. 621 (certiorari denied October 15, 1928), and White Oak Coal Co. v. United States, 15 Fed. (2d) 474.
In this view of the matter there can be no recovery on the plaintiff’s claim for the consequential damages to its business, and for its loss on the sale of the third ship, the Baltimorean, inasmuch as the transfer of these vessels was its voluntary act under a contract, and any damage it suffered was due to its own act and not any act of the' Government. However, if it were otherwise, under the decision in the case of Mitchell v. United States, 267 U. S. 341, 344, it would seem that the plaintiff could not recover for these consequential damages.
The facts found show that neither the business nor the ship Baltimorean was taken, nor was there any intention to take them. See Tempel v. United States, 248 U. S. 121. The plaintiff is not entitled to recover on the claims set up in either the original or amended petition.
It appears that plaintiff is indebted to the United States in the sums of $275.25 and $274.02, and for these sums defendant is entitled to recover judgment, and it is so ordered.
SiNNOtt, Judge; GkeeN, Judge; Moss, Judge; and Booth, Chief Justice, concur.