Ghai-iam, Judge,
delivered the opinion of the court:
This case' grows out of cost-plus contracts entered into by the Government prior to and during the World War, with certain shipbuilding companies for the construction of a number of destroyers and cruisers, under which, speaking generally, the Government was to furnish the materials which would be purchased by the companies. The plaintiff was a subcontractor. He was the owner and manufacturer of patented thrust bearings and parts, and entered into contracts with several of these shipbuilding companies through the medium of a number of purchase orders received between May 1,1917, and October 1,1918, for certain thrust bearings and parts at prices stipulated in the said purchase orders and contracts. The contractors accepted them, and paid for a part of them on that basis. These contracts with the shipbuilders contained provisions quoted in footnote[1] and the *690 plaintiff was visited with knowledge of these provisions, as he was with the provisions of the statutes under which these ships were constructed, attention to which will be hereafter called.
Pursuant to the provisions of the contracts, quoted in footnote, a compensation board was appointed by the Secretary of the Navy for the purpose of ascertaining, estimating, and determining the actual cost and the proper proportions and reasonable allowances as provided in the contracts. This board on July 22, 1918, requested plaintiff to submit a statement showing the cost of thrust bearings and parts then being manufactured for naval vessels. Receiving no report said board requested the Bureau of Supplies and Accounts to make a thorough investigation of the cost of manufacture of the thrust bearings and parts which were sold to shipbuilders for use on naval vessels, and an audit of plaintiff’s books was made in July, 1919, to determine the cost of manufacture, and as a result of this audit the bureau reported that they had found that on nineteen representative orders the plaintiff’s charge had been more than double what it had cost him to manufacture the articles. The board found that the profit was an excessive and unreasonable one.
The board finally, on August 9, 1920, served the following notice upon the plaintiff:
“ The compensation board is now compelled to take final action, but will give such consideration as is possible, to such statements as you may desire to make on or before August 12th.”
Immediately following the receipt of this communication, a conference was held at Washington on August 10th, the result of which was that the plaintiff and the representatives of the Government entered into a price-reduction agreement whereby plaintiff agreed to make a price reduction of 10% on previously quoted prices covering thrust bearings furnished on completed contracts, and a price reduction of on previously quoted prices on bearings to be furnished on uncompleted contracts; and this agreement was formally reduced to writing and executed on the 30th of August, 1920.
*691 Under this agreement the board agreed to approve prices bid by the plaintiff in certain other cases where the board had withheld approval and plaintiff had not been paid, and the plaintiff was to send a certified check for $37,870 to the Treasury in settlement of the reductions agreed upon. As stated, this agreement was formally executed and signed on the 30th of August, 1920. Plaintiff withheld payment of the said sum, claiming that the agreement had been entered into under protest and because to have refused would have delayed payments, created unpleasant controversy, and annoying, expensive interference with the normal conduct and development of his business.
The plaintiff failing to pay, on January 12,1922, the board informed him that it had been authorized by the. Navy Department to withhold payments of such sums as might be due him pending his full reimbursement of amounts due the Government under the contract. Thereupon, on February 18, 1922, the plaintiff forwarded to the board a check, payable to the Paymaster General of the Navy for $35,036.48, with a protest against making the refund. The plaintiff was afterwards informed that by reason of a credit adjustment the amount to be refunded by him would be $32,528.48. His check for $35,036.48 was returned, and on March 6,1922, plaintiff forwarded his check for $32,528.48.
On August 20, 1925, plaintiff filed with the Secretary of the Navy a claim for refund of this amount, which claim was refused on September 16, 1925, and thereupon, plaintiff, on January 5, 1926, filed suit in this court. He states his claim as follows:
“ 1. The compensation board, being without authority to fix or modify the terms of the contracts between plaintiff and the shipbuilders, any moneys which it unlawfully collected from plaintiff may be recovered.
“ 2. The evidence clearly shows that plaintiff made an involuntary paymentamder protest and duress.”
Aside from the provisions of the contract quoted in footnote, the act approved August 29, 1916, 39 Stat. 556, 619, and the act approved March 4, 1917, 39 Stat. 1168, 1195, provided inter alia that
*692 “ * * * no purchase of structural steel, ship plates, or machinery shall be made at a price in excess of a reasonable profit above the actual cost of manufacture.”
The plaintiff is visited with knowledge of this provision of the statutes. The orders were accepted and the goods supplied with this knowledge. The compensation board, as provided by the contracts (see footnote), was regularly appointed by the Secretary of the Navy, with authority not only from the department but under the acts in question to require modifications of the prices in conformity to the requirements of the statutes. If the board had no such authority, and acted without authority, under a mistaken interpretation of the law, in making the contract, such action must be held to have been tortious, and the plaintiff is without remedy. See United States v. Holland-America Lijn, 254 U. S. 148, 155, and Wood v. United States 61 C. Cls. 192, certiorari denied, 210 U. S. 650, and Enid Millvng Co. v. United States, 64 C. Cls. 396, 405.
As to the question of protest, the plaintiff’s claim is that he paid this money under protest. It is not necessary to discuss at length the question of protest in connection with payment of the money. Under the contract the Government had a right to demand the payment of this money, and the plaintiff under that contract was bound for the payment provided there was no duress, which question will be considered later. The protest could create no right. Willard, Sutherland & Co. v. United States, 56 C. Cls. 413, affirmed 262 U. S. 489; Charles Nelson Co. v. United States, 56 C. Cls. 448, affirmed 261 U. S. 17; Southern Pacific Railroad Co. v. United States, 59 C. Cls. 36; Northern Pacific Railway v. United States, 59 C. Cls. 122, 132; and International Contracting Co. v. Lamont, 155 U. S. 303, 310.
As to the second ground, that of duress, it would seem that it was disposed of by a mere recital of the facts. Plaintiff entered into the agreement on August 10.' He went into the conference which brought about that agreement with full knowledge of his rights and of the Government’s contentions, claims, and intentions. At that conference the terms *693 of the agreement were settled. Twenty days thereafter, on August 30th, he signed a formal contract embodying the informal agreement of August 10th. He could have refused to sign the contract and stood upon his rights. He had had twenty days in which to consider it. There was nothing in the shape of duress, no compelling power present at the time the contract was executed. But more than this, many months after signing the contract he made payment in conformity to the contract. After the payment was made his check was returned to him on account of a credit adjustment made by the Government, and thereafter he forwarded his second check. There was here no compelling power or authority. Plaintiff simply concluded that it was better to conform to the contract and pay the money rather than have his payments withheld. There was no alternative of helplessness or probable loss. This contract which bound the plaintiff to pay the money involved was deliberately entered into and was legal and binding upon the plaintiff. See Hartsville Oil Mill v. United States, 60 C. Cls. 712, affirmed 271 U. S. 43. If the plaintiff had intended to rely upon his claimed legal rights he should not have signed the contract. Having signed it, he was bound by it. In the Hartsville ease, supra, Justice Stone in delivering the opinion of the court said:
“ But a threat to break a contract does not in itself constitute duress. Before the coercive effect of the threatened action can be. inferred, there must be evidence of some probable consequences of it to person or property for which the remedy afforded by the courts is inadequate.” Citing Silliman v. United States, 101 U. S. 465, and other cases.
The only grounds which the plaintiff states as compelling him to sign the contract were “ delayed payments, unpleasant controversy, and annoying, expensive interference with the normal conduct and development of [his] business.” This, under the decisions, is not duress.
Plaintiff is not entitled to recover, and the petition should be dismissed. It is so ordered.
Williams, Judge; LittletoN, Judge; GeeeN, Judge; and • Booth, Chief Justice, concur.

 “ Tie contractor slaU use every endeavor to obtain tie materials, ma-clinery, equipment, appurtenances, supplies, etc., under this contract at the lowest possible prices, and shall in no case pay higher prices than required by the existing market conditions nor higher prices than are or would be paid for similar materials, etc., purchased at the same time and under like circumstances and conditions for other work in progress in the yard. Specifications and guaranties of all materials, machinery, and equipment, and the agreements under which such are purchased shall be subject to the approval of the department, and orders, prices, and awards shall be subject to the approval of the compensation board. * * *
“ For the determination of the actual cost as defined above, a * compensation board ’ composed of not more than six nor less than three officers of the Navy shall be appointed by the Secretary of the Navy. This board shall ascertain, estimate, and determine the actual cost in accordance with the * * * clause hereof, and shall determine the proper proportions and reasonable allowances referred to therein, and the decision of said board or a majority thereof shall be binding on both parties to the contract, subject to the approval of the department. Whenever possible it will lay down in advance the methods to be followed in estimating and determining the actual cost, and where this can not be done it will act within three months of the date of the receipt thereof on any claim submitted by the contractor. It will determine the methods to be followed by the contractor in preparing bills and by the inspectors in certifying to them, and will determine the items which must be referred for its decision.”