Peelle, J.,
delivered the opinion of the court:
The claim in this action was referred to the court by the Secretary of War, under Revised Statutes, section 1063, as involving “ disputed facts,” which section reads as follows:
“ Whenever any claim is made against any executive department involving disputed facts or controverted questions of law, where the amount in controversy exceeds three thousand dollars, or where the decision will affect a class of cases, or furnish a precedent for the future action of any executive department in the adjustment of a class of cases, without regard to the amount involved in the particular case, or where any authority, right, privilege, or exemption is claimed or denied under the Constitution of the United States, the head of such department may cause such claim, with all the vouchers, papers, proofs, and documents pertaining thereto, to be transmitted to the Court of Claims, and the same shall be there proceeded in as if originally commenced by the voluntary action of the claimant; and the Secretary of the Treasury may, upon the certificate of any auditor or comptroller of the Treasury, direct any account, matter, or claim of the character, amount, or class described in this section, to be transmitted, with all the vouchers, papers, documents, and proofs pertaining thereto, to the said court, for trial and adjudication: Provided, That no case shall be referred by any head of a department unless it belongs to one' of the several classes of cases which, by reason of the subject-matter and character, the said court might, under existing laws, take jurisdiction of on such voluntary-action of the claimant.”
The claim, as made in the War Department and the one sought to be referred to the court, was for $142,491.03, claimed as balances due on accounts theretofore presented and adjusted for services rendered by the claimant at the request of the War Department in the transportation of troops and military supplies; and such was the claim made in the original petition filed herein, but by the amended petition the claimant seeks to recover only $91,311.48.
The facts in the case, which are voluminous, consisting of *498 official communications, reports, and orders, may be briefly summarized as follows:
1. From March, 1861, to March, 1867, the claimant company performed services for the defendant, at the request of the War Department, in the transportation of troops and military supplies aggregating about fifteen millions of dollars.
The accounts rendered for such services were so voluminous that the accounting officers could not adjust them as they were presented, and as a matter of comity lump sums were advanced, and the accounts upon which such advances were made were thereafter adjusted and the balances found due were paid to the claimant.
While the accounts so rendered were under consideration many questions arose concerningtherates of tariff to be charged for such services, resulting in a lengthy correspondence, set out in the findings, by which the basis of settlement was agreed upon.
In February, 1862, the President, as commander in chief of the Army and Navy of the United States, appointed a military director and superintendent of the railroads in the United States, with “ authority to enter upon, take possession of, hold, and use all railroads, engines, cars, locomotives, etc.,” required for the transportation of troops and military supplies, and in May thereafter the President, by virtue of the authority vested in him by act of Congress, took military possession of all the railroads in the United States.
At the request of the Secretary of War a convention of railroad managers was held in February, 1862, in the city of Washington, to confer in respect of “a just and efficient railroad transport that would secure the Government energetic action, with a fair tariff of charges.”
At that convention, John W. Garrett, president of claimant company,' was present, and was one of fifteen members appointed as a “ business committee.” A short time thereafter that committee made a report in the form of resolutions for the action of the convention, which were unanimously adopted, and, after fixing the rate at which they offered to transport passengers and freight, “Resolved, That it is the opinion of this convention that the Secretary of War should make such compensation as will be equitable to those roads whose expenses are enhanced by reason of being in or near the seat of war.”
*499 Upon the basis of the rates agreed upon the settlement of the claimant’s accounts proceeded, but at the urgent request of the claimant, made from time to time therefor, such accounts were, by order of the Secretary of War, practically settled upon the basis of the company’s regular tariff rates in force at the time the services were rendered up to about January 1, 1863, and thereafter upon the basis of the rates agreed upon as set forth in the findings. The several items of the accounts were passed upon and allowed in whole or in part, and as thus settled the balances found due thereon were paid to the claimant and accepted by it without protest at the time.
2. After the close of the war and after the settlements and payments aforesaid had been made, the claimant applied to the Quartermaster-General for the privilege of revising its accounts, with a view to securing additional allowances thereon, which request was denied, whereupon application was made to the Third Auditor of the Treasury, in whose custody said accounts were, and that officer referred the matter to the Secretary of the Treasury, who directed that said accounts be transmitted to the company for revision, which was done, and the accounts as revised were again submitted to said Third Auditor, and that officer, after stating the basis upon which he would settle said accounts, which was acquiesced in by the claimant,reexamined said accounts, whichexaminationresulted in allowing to the claimant company $38,914.38, $34,732.52, and $128,065.71, or in all $201,712.61, which sums were paid to the claimant October 6,1870, March 18,1871, and June 29,1872, respectively, and by said company received and receipted for without protest or objection.
3. Long thereafter — to wit, in 1880 — the Secretary of War, upon the application of claimant to that effect, directed a reexamination of all of these accounts in the office of the Quartermaster-General, with the result that the same were examined and there was found due thereon the sum of $62,038, which was referred to the Third Auditor of the Treasury Department, but payment thereof was refused on the ground that the settlements of said accounts, made from time to time, upon which payments had been made were accepted by the claimant and no protest was made nor errors complained of; that the settlements so made, as set forth in finding vi, were upon the basis of the rates agreed upon, and the Third Auditor therefore declined to reopen the accounts for any further adjustment.
*500 And. later, when it was suggested by the Third Auditor that the readjustment sought was a one-sided affair and that there was as likely to be errors in favor of the defendants as in favor of the claimant, the claimant then asked that such reexamination might be made for the purpose of ascertaining whether such errors existed, but such application was also denied, and in giving his reasons therefor, as set forth in said finding vi, the Third Auditor says:
“ When these settlements were from time to time made the company accepted payments and neither made any protests nor complained of any errors.”
In October, 1882, the Secretary of the Treasury referred the claimant’s petition for rehearing to the Assistant Secretary of the Treasury, and that officer reported that “from the papers and accounts it would appear that the said company has an equitable claim against the United States,” but, he says, “ it has not been the policy or rule of the Department to reopen cases that have been once heard or adjudicated by former officers of the Treasury,” and that it was for the Secretary of the Treasury “to determine whether he will make this case an exception to the general practice of the Department.”
In September, 1885, the claimant renewed its application for a reopening and reexamination of said accounts on the ground that the settlements theretofore made had not been upon the basis of the rates agreed upon, but such application was denied by the Comptroller, as set forth in finding vii, who, in his opinion, among other things, says: “ There is also a failure, I think, to satisfactorily establish that any substantial error was committed to the prejudice of the company in any of these settlements f and further, that “in all cases of alleged errors of any importance they do not seem to be mistakes in computation, but errors of judgment in the application of legal rules to the facts which were before the accounting officers, and such errors, if any existed, can not be corrected by any subsequent action of the accounting officers themselves.”
In February, 1886, the Secretary of War, at the request of the claimant’s attorney, made inquiry of the Secretary of the Treasury concerning the settlement and payment of said sum of $62,038, theretofore transmitted to the Tljird Auditor, which was referred to the Comptroller, in which, after referring to his previous opinion denying a reopening and a reexamination and *501 adjustment of said accounts, says: “No new or additional facts are now presented and nothing has transpired since the former decision was rendered to lead me to change or modify the views which I then expressed.” And, further, that by reason of the settlements and adjustments made as aforesaid that the claim had ceased to be a pending claim in the War Department, and that by reason thereof the claim must “be deemed to be extinguished, and it is not believed that the claimant can, by any act of its own, resuscitate it so as to. confer upon the War Department jurisdiction to act under section 1063.”
4. In March, 1866, an application was made to the Secretary of War for a rehearing before him in respect of said claim, and an ex parte hearing was had, the result of which was that the claim was referred to this court under section 1063 as involving “ disputed facts.”
The defendants ask judgment on their counter claim for the payments made in 1870,1871, and 1872, aggregating $201,712.61, on the ground that accounts of claimant had theretofore been settled and adjusted and should not have been reopened.
The questions presented are not free from embarrassment, especially in view of the fact that after the accounts of the claimant had been first settled and the amounts found due thereon had been paid, as set forth in finding iv, the Secretary of the Treasury, on the application of the claimant therefor, directed that the accounts so settled be returned to the claimant for revision, which was done, after which the accounts so revised were again presented to the Third Auditor and settled on a basis satisfactory to the claimant, resulting in allowing on said accounts the additional sum of $201,712.61, which was approved by the Comptroller and certified for payment, and payment was made on requisition from the War Department.
While we are inclined to the opinion that the accounts as originally settled were practically upon the basis of the rates agreed upon, yet there was a difference of opinion between the defendants’ officers and those of the claimant company in respect of the proper construction of the tariff rates, and particularly the rates for the transportation of hay and live stock, as disclosed by the correspondence, and it was doubtless to remove that objection that the Secretary of the Treasury pursued the course he did.
The resolution of the convention convened at the request of *502 the Secretary of War, to the effect “that the Secretary of War should make such compensation as will be equitable to those roads whose expenses are enhanced by reason of being in or near the seat of war,” had, in our opinion, much to do with the controversy over rates, and perhaps also with the revision of the accounts and the additional allowance made thereon.
It was quite natural, however, for the officers of the claimant company to entertain different views from those of the Secretary of War as to what such equitable compensation should be, but it was left with the Secretary of War in the exercise of good judgment to determine such rates; and thus it was that he allowed said claimant practically its regular tariff rates in force at the time of the rendition of tho service up to January 1, 1863, as prior thereto the company had, by reason of “ being in or near the seat of war,” suffered its principal loss in the destruction of its bridges and other property at the hands of the Confederate forces. But while this is true, it is also true that it was by reason of the protection afforded to the claimant company by the military arm of the Government that it was enabled to operate its lines of road at all.
However, inasmuch as the last settlement resulted in allowing to the claimant company additional sums aggregating $201,712.61, so made on the accounts as revised, with the approval of the same Comptroller who had previously passed upon the accounts (Rollins & Presbrey Case, 23 C. Gis. R., 106) and, too, upon the basis of rates acquiesced in by the officers of the claimant company, we are inclined to give the claimant the benefit of the doubt in respect of the finality of the first .settlement.
But in our view of this case it is unnecessary for us to further consider the question of the defendants’ right to recover on their counterclaim, for if the court is without jurisdiction to consider the claim sought to be referred to it by the Secretai’y of War, then the, counterclaim, though it maybe well founded, falls with it, as was held in the Boehm Case (21 C. Cls. R., 290), and Looney's Case (18 O. Cls. R., 8), in which latter case, being an action against the District of Columbia, the court said:
“The defendants now insist that we shall proceed to give judgment in their favor against the claimant for this amount upon the counterclaim. This, in our opinion, we are not authorized to do. The Court of Claims has no original jurisdiction of *503 actions in behalf of the District of Columbia against its alleged debtors. The District can not primarily institute any suit in this court, and so can not, of its own motion, bring parties here to answer to claims against them.”
The same rule is applicable to the United States, as there is no statute authorizing them to bring actions in this court in the first instance against their alleged debtors.
As regards the last settlement, however, we think that must stand as haviug been finally settled both in the Treasury and War Departments, for the reasons that the accounts so settled were passed upon by the Comptroller, and the additional allowances made thereon were paid on requisition of the War Department and a reopening denied.
Under Revised Statutes, section 236, “all claims and demands whatever by the United States or against them, and all accounts whatever in which the United States are con-' cerned, either as debtors or as creditors, shall be settled and adjusted in the Department of the Treasury.”
While in such settlements the decision of the Comptroller, under Revised Statutes, section 191, is final and “ conclusive upon the executive branch of the Government,” still it is also provided that “the head of the proper Department, before signing a warrant fdr any balance certified to him by a Comptroller, may, however, submit to such Comptroller any facts in his judgment affecting the correctness of such balance; but the decision of the Comptroller thereon shall be final and conclusive, as hereinbefore provided.”
Thus it will be seen that while it is the duty of the head of aDepartment to issue his requisition for payment of the amount certified, he may, before signing such requisition, submit facts affecting the correctness of such balance to the Comptroller, whose decision thereon is “final and conclusive;” but it will be noted that there is no provision for the head of a Department submitting facts to the Comptroller affecting the correctness of his decision in rejecting a claim, though that may be implied, and this view is sustained by the decision in the case of the Delmvare River Steamboat Company (5 O. Cls. R., 55).
However, “whenever any claim is made against any Executive Department ” over which it has jurisdiction, such Department may, without action in the Treasury Department, refer such claim to this court, provided it be one which the “ court *504 might, under existing laws, take jurisdiction of on such voluntary action of the claimant.” That is to say, the bead of a Department can not confer jurisdiction on the court by the mere reference of a claim. Such jurisdiction must inhere under existing laws.
The balances certified by the Comptroller to the Secretary of War were not subject to be changed or modified, but were conclusive upon him. Therefore his direction to have the settled accounts reexamined by the Quartermaster-General before the same had been reopened by the Comptroller was premature and of no validity.
Such settlements being conclusive, as defined in section 191, there was nothing the Secretary could do in respect thereof, and hence be could not by such reexamination give life to the claim or thereby constitute it a pending one, “ involving disputed facts,” as such dispute had become finally merged in the award on the acceptance of the payment thereof and the refusal of the Comptroller to reopen the accounts.
His functions in the premises ended with the issuance of the requisition for the payment of the balances so certified by the Comptroller.
The time to invoke the aid of the court in revising the balances certified by the Comptroller to the heads of Departments is before such settlements have reached the stage of finality or res judicata.
The settlement of the claimant’s accounts, therefore, by the Comptroller being final, the same could not be reopened by his successor in office, except to correct “ mistakes in matters of fact arising from errors in calculation and in cases of rejected claims in which material testimony is afterwards discovered and produced,” as was long ago ruled in the familiar case of The United States v. Bank of the Metropolis (15 Peters, 377-401), since which time it has become the settled rule of administrative law, as held by this court in Jackson's Case (19 O. Cls. B., 505-509).
The claimant’s accounts were first settled as a whole, and reopened only in respect of such accounts as had been settled by the Quartermaster-General through quartermasters acting as disbursing officers, and the reopened accounts having been revised and again passed upon by the Comptroller, and the balance certified and payment thereof made on requisition of *505 tbe War Department, sucb accounts, as also those previously-settled and not reopened, must be held to have been finally settled and come within the decision in the Armstrong Case (29 C. Cls. B., 148-169), wherein the court said: “If the disal-lowance of the claims by the Second Comptroller * * *
was not thereafter reopened by reason of fraud, mistakes in calculation, or the filing of material new evidence, the decision was final and conclusive and the case was res judicata in the Department; and it was not, therefore, within the power of the Secretary or his successor in office to transmit the claims to this court.”
Such being the case, the revised accounts so settled could not, nor could such of the settled accounts as had not been so revised, be reopened, for in the meantime there had been a change in the office of the Comptroller, and more than six years had elapsed, and no “mistakes in matters of fact arising from errors in calculation” were shown to exist, nor was it shown concerning the disallowed portions of such accounts that any “material testimony” was “afterwards discovered or produced,” all of which was for the Comptroller to determine, as we held in the Armstrong Case (supra).
Hence the claim became res judicata in both the Treasury and War Departments, and that being so the Secretary of War had no authority to settle or pay the claim, and having no authority to pay he had no jurisdiction to refer the claim to this court. (Hart v. United States, 118 U. S., 62, affirming the decision of this court, 16 C. Cls B., 459.)
And the same rule was held applicable to cases referred under the Act March 3,1883, known as the Bowman Act, McClure's Case (19 C. Cls. B., 18,30); also to claims referred which were not filed in the Department from whence they came within six years after they had accrued. (Finn v. United States, 123 U. S., 231; Savage’s Case, 23 C. Cls. B., 255.)
True, the facts in those cases differ from the case at bar, and in the Hart Case there was a resolution having the force of law prohibiting the payment of the claim referred, but nevertheless the principle is the same — i. e., that if the Department had no jurisdiction to settle and pay, the head of such Department had no jurisdiction to refer the claim to this court.
The Armstrong Case was followed by the decision in the Cotton Case (29 C. Cls. B., 207-223), wherein the Secretary of *506 War bad transmitted to the Treasury Department for payment an account for $10,886 for army transportation. The Second Comptroller disallowed a part of the claim and certified a balance of $5,197, which was paid on requisition of the Secretary of War. Afterwards, and after the head of the War Department had changed, the claimant renewed its demand in both Departments for such disallowed portion, and the Secretary of War referred the claim to the court under section 1063. One defense was that the Secretary of War had exceeded his authority and that the court had acquired no jurisdiction, in reference to which the court said:
“By the above section 1063 the head of an Executive Department may transmit to this court any claim described therein; but we hold it must be a live claim — that is, one over which he has jurisdiction and which has not already been 'finally disposed of, settled, and become res judicata, or otherwise barred. We so held in the Armstrong Case, decided at the present term.
“Were it not so, then all claims finally rejected by the Departments or otherwise barred since the establishment of the Government might be opened by simply making applications to the beads of the Departments against which the claims were made to have them transmitted to this court.”
To so hold would be constituting this court the medium by which settled accounts could be opened at the will of the head of a department, and would in effect nullify the provision of section 191 in respect of the finality of such settlements.
In the Cotton Case it was also said: “It has repeatedly been held by this court and the Supreme Court that the final decision of a matter by a public officer is binding upon his successor, and that the right of an incumbent to review a predecessor’s decision extends only to mistakes in matters of fact arising from errors in calculation and to cases of rejected claims in which material evidence is afterwards discovered and produced.” {See the authorities there cited.)
If, therefore, the precedent conditions essential to a reopening of the case were not present, as decided by the Comptroller, whose decision, as held in the Cotton Case as well as in the Armstrong Case, is controlling, then the Secretary of War was without authority in the premises.
The claim had ceased to be a live claim; it was not a claim pending in the War Department, and certainly the head of a *507 Department bas no authority to refer to the court a claim not pending in such Department, and in this respect we said in the Armstrong Case that the words, “ Whenever any claim is made against any Executive Department” necessarily imply that the claim is pending in such Department until allowed and paid or finally rejected.”
When the Secretary of War made requisition for the payment of the amount certified by the Comptroller he thereby concurred in the decision of that officer, as was held in the Cotton Case; and, further, that he might have refused to issue a requisition and have transmitted the claim to this court, as was done in the cases of the Delaware River Steamboat Company (supra) and the Winnisimmet Company (12 C. Cls. B., 319).
In which cases the court had authority to pass upon the merits of the claims, for the reason that the claims so referred were made after the Comptroller had certified balances, for the payment of which the Secretary of War had refused to issue requisitions.
But where such claims have been rejected, or where claims have been disallowed in part and the balances certified for the residue and such residue paid on requisition from the head of the Department in which such claim originated, and a reopening of the accounts has been denied by the Comptroller, we are aware of no case sustaining the authority of the head of such Department in referring to this court á claim for such disallowed parts, even though he may have caused such settled accounts to be reexamined, resulting in finding a balance in favor of the claimant.
The amount found due, and upon which the Secretary of War based his reason for sending the claim to this court, is not even prima facie evidence of the amount due, as was held in the McKnight Case (13 O. Cls. B., 292).
That provision of section 1063 which gives the Secretary of the Treasury authority, upon the certificate of the Auditor or Comptroller to refer “ any account, matter, or claim, of the character, amount, or class described in this section,” to the court for “trial and adjudication” does not apply to any other Department.
It was by virtue of that provision, that the claim in the New Yorle Case (26 C. Cls. B., 467) was referred to this court.
In that case, however, it was held that the claim had never been formally rejected by the accounting officers and that it *508 was a pending claim, not res judicata in tbe Department at the time of its reference, and consequently tbe court took jurisdiction and tbe case proceeded to trial on its merits.
There is little, if any, analogy between that case and tbe one at bar, for in tbe case at bar there was not only a formal settlement of tbe accounts and payment of tbe amounts found due, but tbe Comptroller bad refused to reopen tbe accounts.
While in tbe settlement of the claimant’s accounts there was a controversy between it and the accounting officers, and also between tbe accounting officers and tbe Quartermaster-General, as to tbe amount due, as is manifest from tbe correspondence and tbe claimant’s contention in this case; still, when tbe accounts were settled, tbe balances certified were paid to tbe claimant and by it accepted, and for more than six years thereafter was acquiesced in without further action in any department.
Therefore, for the reasons we have given, we must bold that tbe Secretary of War was without jurisdiction to refer tbe claim to tbe court; and that if this be considered an action brought voluntarily by tbe claimant, it must be held to be barred by the statutes of limitations, of which the court is bound to take notice, and which can not be waived by any officer of tbe Government. Finn v. The United States (123 U. S., 227); Fendall v. The United States (107 U. S., 123). Tbe petition and counterclaim are, therefore, both dismissed.