Graham, Judge,
delivered the opinion of the court.
This suit grows out of a contract for the saie of certain horseshoes by the plaintiff to the defendant. The horseshoes were delivered and accepted by the defendant. Under an arrangement between the parties the defendant was entitled to a 2 per cent discount upon the gross amount involved in the material delivered. The defendant paid the freight from the point of origin, Joliet, Ill., which in effect is Chicago, to Jeffersonville, Ind., the point of destination. Plaintiff received the net sum of $133,291.71, being the basic contract price for the horseshoes delivered less 2 per cent discount. It is suing here to recover the sum of $3,268.31, being the difference in amount between the freight charges from the point of origin to the point of destination and the freight charges from Pittsburgh to the point of destination.
The defendant stands upon the contract which called for the delivery of the goods f. o. b. Pittsburgh, Pa. The plaintiff contends that it was the understanding of the parties, confirmed by correspondence with representative of the depot quartermaster, after acceptance of the order by the defendant that the price named was upon the basis of ” Pittsburgh base,” delivery f. o. b. Chicago; that is to say, 111 at the defendant was called upon to pay the freight from Pittsburgh to the point of destination less the amount of freight from the point of origin to point of destination.
The contract, dated March 22, 1918, was duty executed by the parties.
Plaintiff asks a reformation of the contract upon the ground of mistake. The facts show that the plaintiff in its proposal fixed its price with reference to the “ Pittsburgh base.” This was not accepted by the defendant, and thereafter the contract, as stated, was executed by the parties. Deliveries began on the 6th of April, 1918, and continued through to the 4th of May, 1918, inclusive, and the material was paid for on the basis of material received and not per invoices. There is no mutual mistake shown. On the contrary, the plaintiff does not seem to' have raised any question in the matter until the 17th day of April, at which time it had delivered about one-third of the material. It accepted the payment made by the Government, although *245 in signing the final voucher it stated that “We do not wish to place ourselves in the position of accepting payment as payment in full, and did so to facilitate matters,” the purpose of both parties in executing this voucher being to get a decision from the Comptroller of the Treasury.
It is unnecessary to go into how the amount claimed is arrived at. Suffice it to say that plaintiff is' attempting to recover an amount of money which it never paid out upon a theory of payment which is contrary to the terms of the contract entered into between the parties.
It is elementary that there is merged in an executed contract all previous negotiations and understandings between the parties and that it can not be reformed or set aside unless some fraud, accident, or mutual mistake be shown ivliich would have the effect of establishing the fact that the contract did not represent the union of the minds of the parties The presumption is in favor of the contract, and it can not be reformed or set aside without proof of a character that is clear and convincing.
The plaintiff made a proposal which embodied the basis of payment which it contends for here. The defendant accepted the proposal upon the basis which was named in the contract. The contract was prepared and sent to the plaintiff and executed by both parties and deliveries commenced thereunder. After deliveries had been commenced and a considerable portion of the material had been delivered the plaintiff took up the matter of what it claimed was an incorrect statement of the terms of the payment in the contract. There is some evidence that its view of the meaning of the contract was accepted by the representative of the depot quartermaster. No authority has been shown on the part of this representative of the depot quartermaster to alter this contract after it was executed, and that he had no authority to do so by virtue of the position which he held is well established. Wilcox v. United States, 56 C. Cls. 22A-235.
Payments were made on the basis of the contract and accepted by the plaintiff. In signing the final voucher it did in a way reserve certain rights, but this reservation does *246 not in any way alter or affect the real principle involved. Under the terms of the contract the delivery was f. o. b. Pittsburgh. It is a well known and understood term in commercial circles. It simply meant that the defendant was to pay the freight charges up to tire charge from Pittsburgh to the point of destination; in other words, it was a maximum charge which the defendant was to pay. Should the actual charge be less than this amount, the defendant was only to pay that charge, whatever it was. Should it be more than the maximum charge, the defendant was only to jray the rate from Pittsburgh to point of destination. In this case the freight from the point of origin, Joliet, Ill., was less than this maximum charge from Pittsburgh to thc-poiut of destination and was paid by the defendant.
There is no proof in the case to justify a reformation of the contract. There is no sufficient proof of mutual mistake at the time of its execution. The plaintiff has received the full consideration fixed by the contract. In this view of the matter the petition should be dismissed, and it is so ordered.
Hay, Judge; DowNey, Judge; Booth, Judge; and Campbell, GMef Justice, concur.