Graham, Judge,
delivered the opinion of the court:
In connection with the adjustment of its revenue taxes the Commissioner of Internal Revenue on November 13, 1924, allowed the plaintiff the sum of $1,363.45 refund of income and excess-profits taxes for the year 1917, and certified the same for payment to the General Accounting Office. On January 20, 1926, that office sent plaintiff notice of settlement of said allowance by the issuance of two warrants, one in favor of the plaintiff for $7.95 and the other in favor of the Treasurer of the United States for $1,355.50, the latter amount to be used as a payment claimed by the United States on account of an alleged overpayment to the plaintiff under a purchase order dated June 22, 1918, for 250 control handles.
The plaintiff refused to accept said settlement and returned the warrant to the General Accounting Office.
Thus are involved the settlement by the General Accounting Office and the validity of the counterclaim set up by that office and deducted from the allowance, namely, $1,355.50. The court has jurisdiction to enforce the allowance of the refund as a claim arising under a law of Con *624 gress. Kaufman v. United States, 11 C. Cls. 659, 96 U. S. 567, 569.
The plaintiff was negotiating with the Ordnance Department to furnish it 4,500 control handles for bomb-release mechanism. Pending these negotiations a representative of the War Department ,on June 12, 1918, wrote plaintiff requesting the delivery of 250 of said handles by July 1st, and notified plaintiff that it would be paid for the same the cost of production plus 10 per cent profit, the price, i. e., cost and profit, in no event to exceed $9.75 per unit.
The plaintiff without protest or objection proceeded immediately to fill the order and completed the handles ready for delivery by July 1 and delivered them. On June 22, 1918, a more formal order was issued conforming to the first order as to the number of handles to be supplied, the percentage of profit, and the limit of $9.75 per unit price, which included cost-plus profit.
Thereafter, on July 26, 1918, the plaintiff for the first time complained that the maximum price fixed in the order •was not satisfactory and asked for a revision of the price. In September, 1918, an accountant of the ordnance office at Bridgeport visited plaintiff’s factory, made an examination and reported that the cost of manufacturing the handles, plus 10% profit, was $1,355.50 more than the maximum price fixed in the orders. The matter seems to have dragged along until finally on February 12, 1919, Captain E. B. Cooper, of the Ordnance Department, undertook to change the price fixed in the letter of June 12 and the order of June 22, and issued a new order, dating it back to June 22, 1918, revising the price and fixing the sum of $3,793.00 reported by the auditor as the proper price to be paid, whereas under the order the price would have been $2,437.50; and thereupon plaintiff was paid $3,793.00. This the Government is here contending was an overpayment to the plaintiff of $1,355.50, upon the ground that the original order and its fulfillment without objection or protest was an acceptance of the order, and a contract; that the plaintiff was entitled to be paid only under that contract the price therein named, and that Captain Cooper had no authority to change that contract and *625 increase the consideration. It does not appear from the findings that he had any authority from anyone to take any steps- in connection with the contract, much less to set it aside and make a new one.
Under the facts found it must be held that the giving of the order by the proper officer, the receipt of it, and the manufacture and supply of the articles ordered, without complaint or objection as to the price named, created a contract. See Nelson Co. case, 56 C. Cls. 448, 261 U. S. 17, 23, 24; Willard, Sutherland & Co. v. United States, 56 C. Cls. 413, 262 U. S. 489, 494; American Smelting & Refining Co. v. United States, 259 U. S. 75, 78, 79; and Atwater & Company v. United States, 65 C. Cls. 621, 643, 644.
The alteration in the contract made by Captain Cooper was without authority and not binding. It was an attempt to create a legal liability upon the part of the Government, which he had no authority to create in view of the fact that the Government’s liability was fixed by the original contract. Phoenix Horseshoe Co. v. United States, 59 C. Cls. 234, 245; and Wilcox v. United States, 56 C. Cls. 224, 235.
Another claim has been suggested in this case. In a tax suit for refund by the plaintiff, this court on November 3, 1924, rendered a judgment in favor of’plaintiff for $2,787.33. It was a final judgment" and no appeal was taken within the prescribed time. It was certified to the Treasurer of the United States and by him transmitted to Congress with other claims for appropriation for payment, and was certified for payment by Congress in the second deficiency act for the fiscal year 1925, approved March 4, 1925. On January 20, 1926, the General Accounting Office sent notice to the plaintiff of the settlement of said judgment, in which settlement two warrants were issued, one in favor of the plaintiff for $71.62 and one in favor of the Treasurer of the United States for $2,715.71. The latter warrant was based upon a claim apparently of record in the General Accounting Office, which grew out of a contract between plaintiff and the Government, in which plaintiff furnished the Government certain materials and was paid the contract price. Thereafter it was claimed by the Accounting Office that *626 plaintiff had delayed in completing its contract, and was liable for liquidated damages in the sum of $2,648.74, for the payment of which the judgment given him by this court was reduced by that amount and a warrant issued in favor of the Treasurer of the United States.
This claim by the General Accounting Office for liquidated’ damages had not been adjudicated and was disputed. The judgment of this court of November 3, 1924, was a final judgment, unappealed from, properly certified to the Treasurer, by him certified to Congress, and by Congress recognized, and an appropriation made for its payment. It is clear that the General Accounting Office acted illegally in refusing to pay the judgment. And while we would be disposed from the jiresent record to hold that the claim for liquidated damages was not a valid claim, it is nevertheless evident that the plaintiff’s forum for relief is not this court but some other court where the payment of judgment can be enforced. As the court can not consider the claim, it can not pass upon the counterclaim. Baltimore & Ohio R. R. v. United States, 34 C. Cls. 484, 502.
But, aside from this, the petition, while reciting the facts as to this judgment and counterclaim, prays for no relief from the action there taken, and only prays for judgment for $1,363.45, the amount of the said tax refund.
Judgment should be entered for plaintiff under the first claim in the sum of $7.95, with interest at 6 per cent per annum from January 20, 1926, and it is so ordered.
SiNNOTT, Judge; GebeN, Judge; Moss, Judge; and Booth, Chief Justice, concur.