Whaley, Chief Justice,
delivered the opinion of the court:
By Senate Resolution No. 327, of November 19, 1940, there was referred to this court for action in accordance with the Tucker Act of March 3, 1887, (24 Stat. 505), the claims of plaintiffs, Senate Bill 4420, 76th Congress, 3rd Session, pro *618 posing relief under an alleged purchase of certain vessels from the United States Shipping Board and authorizing the payment of a certain sum of money to the plaintiffs, which is the difference between the compromise amount, which the plaintiffs freely and voluntarily accepted in full payment of their claims against the United States Shipping Board, and the amount now claimed by the plaintiffs, the First National Steamship Company, The Second National Steamship Company and the Third National Steamship Company.
Prior thereto the three petitioning steamship companies filed three separate suits in this court December 31,1925, and they were given docket numbers E-622, E-623, and E-624. Upon the contested issues of fact testimony was taken by a commissioner and exhibits were received in evidence. At conclusion of the trial, the commissioner addressed a communication April 4,1935, to the plaintiffs’ attorney of record, with copy to defendant’s attorney, stating his dissatisfaction with the conclusions reached in the findings suggested to him, and giving his opinion that the state of the record indicated “no binding agreements * * * no meeting of the minds”. The following quotation is taken from this communication :
There is no dispute that plaintiffs deposited money arid had possession of certain ships for some months. It cannot be assumed that plaintiffs do not owe something to the Government for the use of the ships. If there was no meeting of the minds between plaintiffs and the Shipping Board, should plaintiffs’ liabilities to the Government be measured on the basis of the reasonable value of the use of the ships ? On this issue, the cases would have to be opened up for additional testimony.
Neither party asked for a reopening of the cases for the purpose of offering testimony on the question of appropriate hire for the plaintiffs’ use of the vessels. On the contrary, confronted with the situation described in the commissioner’s communication, the parties entered into a compromise settlement, and on October 7,1935, the release set forth in the findings of fact was executed by H. O. Schundler in- *619 diviclually and as a committee of one for each of the plaintiffs.
This release was executed upon the payment October 7, 1935, of the sum of $250,000 by the United States Shipping Board Merchant Fleet Corporation to the plaintiffs.
The check by which this payment was accomplished was endorsed by the three plaintiffs by Stanley Suydam, as attorney in fact, who had been entered as of counsel for the plaintiffs May 22, 1935.
The commissioner reported the cases back to the court October 18, 1935, and October 30, 1935, the plaintiffs filed a motion to dismiss the petitions.
November 4,1935, the court filed an order dismissing petitions and counterclaims.
On plaintiffs’ motion Stanley Suydam was substituted February 7,1940, as their attorney of record, and on the same day the plaintiffs filed a motion for reinstatement or a new trial.
This motion, after answer and briefs, was argued and submitted to the court May 6, 1940, and was overruled by the court June 3,1940.
On December 6,1940, there was filed by the three plaintiffs the present suit, which was docketed as Congressional No. 17764. Jurisdiction is invoked under Senate Besolution No. 327, 76th Congress, 3rd Session, November 19,1940, and thé petition prays for a judgment against the United States.
Section 151 of the Judicial Code, 36 Stat. 1087, 1138, is as follows:
Sec. 151. Whenever any bill, except for a pension, is pending in either House of Congress providing for the payment of a claim against the United States, legal or equitable, or for a grant, gift, or bounty to any person, the House in which such bill is pending may, for the investigation and determination of facts, refer the same to the Court of Claims, which shall proceed with the same in accordance with such rules as it may adopt and report to such House the facts in the case and the amount, where the same can be liquidated, including any facts bearing upon the question whether there has been delay or laches in presenting such claim or applying for such *620 grant, gift, or bounty, and any facts bearing upon the question whether the bar of any statute of limitation should be removed or which shall be claimed to excuse the claimant for not having resorted to any established legal remedy, together with such conclusions as shall be sufficient to inform Congress of the nature and character of the demand, either as a claim, legal or equitable, or as a gratuity against the United States, and the amount, if any, legally or equitably due from the United States to the claimant: Provided, however, That if it shall appear to the satisfaction of the court upon the facts established, that under existing laws or the provisions of this chapter, the subject matter of the bill is such that it has jurisdiction to render judgment or decree thereon, it shall proceed to do so, giving to either party such further opportunity for hearing as in its judgment justice shall require, and it shall report its proceedings therein to the House of Congress by which the same was referred to said court.
The subject matter of this suit is one over which this court has jurisdiction, damages being laid for breach of contract with the defendant, represented by the United States Shipping Board. Section 145 of the Judicial Code, 36 Stat. 1087, 1136.
The same subject matter, however, appeared in the three prior suits, already referred to, Nos. E-622, E-623, and E-624, and on November 4, 1935, on plaintiffs’ motions, the petitions were dismissed. The cause has therefore long since become res judicata. The doctrine of res judicata is well founded. Otherwise, litigation would be without end.
Defendant’s counterclaims are based on alleged sales to a concern which is not the plaintiffs’, and is not any one of the plaintiffs.
Findings of fact were not made at the conclusion of the original trial. It is not necessary for the finality of a judgment that findings of fact be made, where the party against whom judgment is rendered has consented to that judgment. Harniska v. Dolph, 133 Fed. 158. And in the prior cases here, docketed E-622, E-623, and E-624, the plaintiffs themselves moved the court that their petitions be dismissed. In circumstances of that sort findings of fact serve no purpose *621 and are unnecessary. In this connection see also Day v. Johnson, 72 S. W. 426.
The prior litigation terminated in the judgment of this court November 4, 1935, 81 C. Cls. 972. It was said in Rymarkiewicz v. United States, 42 C. Cls. 1:
It is elementary that the same court can only render judgment once between the same parties upon the same issue unless the judgment has been reversed or set aside, or for some other reason a new trial has been granted. When a matter has once properly passed to judgment, without fraud or collusion, in a court of competent or concurrent jurisdiction, it has become res judicata, and the same matter between the same parties cannot be reopened or subsequently considered. Spicer's case (5C. Cls. R., 34); Hollister v. Abbott (31 N. H., 448; 64 Am. Dec., 342); Case v. Beauregard (101 U. S., 688); Lawrence v. Milwaukee (45 Wis., 306) ; Hopkins v. Lee 16 Wheat., 109).
As to this court, this rule has received statutory recognition in Section 179 of the Judicial Code:
Any final judgment against the claimant on any claim prosecuted as provided in this chapter shall forever bar any further claim or demand against the United States arising out of the matters involved in the controversy. 36 Stat. 1087, 1141.
This bar against the plaintiffs is statutory and jurisdictional. The petition prays for judgment against the United States and must therefore be dismissed. Since suit cannot be maintained, the counterclaims of the defendant fall with the petition and must also be dismissed. Baltimore & Ohio v. United States, 34 C. Cls. 484, 502; Tale & Towne v. United States, 67 C. Cls. 618, 626.
Where a compromise payment has been made, and the payee seeks to rescind the compromise agreement, he must in suit tender return of the payment. The plaintiffs here make no such tender. This alone is ground for dismissal. Gilbert v. Rothschild, 19 N. E. (2d) 785; 280 N. Y. 66.
Both petition and counterclaims will accordingly be dismissed, and it is so ordered.
Our conclusions with respect to defendant’s plea of fraud are set forth in the findings of fact. The degree of proof *622 required to establish more a ance of the evidence. It appears that the witness in controversy had negotiations with various parties, and he might well be mistaken, without fraudulent intent, as to the effect of what they said at different times, or what they said at any particular interview unless he was possessed of perfect continuing recollection. In addition, it is not absolutely certain that the testimony, as a whole, was gravely inconsistent. The plea of fraud is therefore not sustained.
The resolution referring S. 4420 hereto provides that this court shall
Report specifically to the Senate (1) whether there were any sales of or valid contracts to sell the subject vessels to said companies, and whether the companies breached any contracts, and thereby damaged the United States Shipping Board to the extent of $384,256.26 or any part thereof, and (2) whether the payment to said companies on October 7, 1935, was a payment of all of the moneys due and owing said companies on account of the claims of said companies existing on December 31, 1925, notwithstanding any statute of limitations, laches, any release, settlement, accord and satisfaction, or prior adjudication; such report to be made by the Court of Claims, or action under this resolution to be taken by the court, so as to make its action and report during the first session of the Seventy-seventh Congress, if possible.
The Senate resolution is divided into two parts. The fore part refers hereto a pending bill, cognizable under Section 151 of the Judicial Code. As to this phase of the Congressional reference petition and counterclaims are dismissed.
The second part of the resolution propounds the two questions quoted.
The reply to these questions may be perhaps better understood with a reference to the proof.
There were no sales of the vessels here involved. The parties to this suit never did get beyond the negotiating stage.
As to valid contracts to sell, the answer is, that there were no valid contracts to sell. It may be fairly inferred that the Shipping Board offered to sell to the plaintiffs the three vessels in controversy on Shipping Board terms when those *623 terms were decided upon by the Shipping Board, and that, when the Shipping Board decided upon those terms, the offer was rejected by the plaintiffs. But an unaccepted offer to sell is not a contract to sell. There was no contract, and the absence of a contract naturally gives rise to uncertainty. It should be noted that the plaintiffs are not suing on an offer to sell, on a sale, or on a contract to sell.
Rejection of a tender of defendant is set forth in Finding No. 9. The statement therein that “this vessel was purchased” is not proof that the vessel was actually purchased— it is merely a layman’s expression and has no determinative legal significance. This looseness of expression may serve to account for some uncertainty in witness Schundler’s testimony.
We are of the opinion that the plaintiffs breached no contracts. A contract cannot be erected out of mere negotiations. Contracts must represent a meeting of minds.
The delivery of three ocean-going vessels into the keeping of three reputationless and newly-formed companies, without a contract, may occasion some wonder and speculation.
There is no satisfying explanation for this in the record. There is, however, an indication of confusion in the Shipping Board, misunderstandings, and an unmatured policy as to disposal of vessels, which may account somewhat for the situation. It must not be 1 ost sight of that this case was tried many years after the event, and is characterized by the infirmity of age.
The findings state a possible accounting, which may need some explanation. Some of it is agreed to.
The deposits made by or in behalf of the plaintiffs with the defendant amounted to $538,048.23, and this was ten percent of the combined book value of the three vessels.
The changes that the plaintiffs made in the vessels were for their own purposes. The defendant did not agree to pay for them, and for the purposes of the Shipping Board the alterations were not necessarily improvements. They are not shown to have been of any use to the defendant.
The expense of returning the vessels to the point of original delivery is not charged to the defendant. The place for return is the place of original delivery.
*624 The accounting thus set forth does not include two important items — there might be others, not disclosed. These two items are (1) an unascertained sum for charter hire during the period of use by the plaintiffs, and (2) the sum of $250,000 paid to these plaintiffs in compromise and settlement.
The remaining question propounded in the resolution is whether the payment of the compromise sum of $250,000 “was a payment of all of the moneys due and owing said companies on account of the claims of said companies existing on December 31,1925, notwithstanding any statute of limitations, latches, any release, settlement, accord and satisfaction, or prior adjudication.”
For the purpose of answering this final question we first assume the absence of any statute of limitations, any laches, any release, any settlement, any accord and satisfaction, any prior adjudication.
The balance shown in Finding No. 13 is $302,621.80. If, let us say, charter hire for the three vessels be reckoned at $52,621.80, the balance is reduced to $250,000, which is covered by the amount paid in compromise.
Charter hire of $52,621.80 represents roughly 25 cents per deadweight ton per month, presumably not more than a nominal rate of hire, and, within this framework of accounting, all that the United States gets out of the transaction is a nominal hire and the return of necessarily deteriorated vessels with unsolicited changes made in them, not for the benefit of the United States, but for the benefit of the plaintiffs.
Since there was no contract in this case, we cannot say that, as to any one item, it is accounted for according to contract. Any balance therefore is without binding force.
Solely as a matter of accounting, the final payment of $250,000 closes all accounts. This must be so because the sum of $250,000 may not be analyzed or broken down into its constituent elements. It is a compromised amount and has no constituent elements.
This court believes that it is of the utmost importance that the settlement between the parties, made at arms’ length, in *625 good faith upon the part of representatives of the Federal Government, and fair in every aspect, with no concealment by either side, be not disturbed.
The plaintiffs are entitled, neither as a matter of law nor of equity, to more than they already have received.
' This court is of the opinion that the payment to the plaintiffs on October 7, 1935, was a payment of all of the moneys due and owing the plaintiffs on account of their claims existing on December 31, 1925, notwithstanding any statute of limitations, laches, any release, settlement, accord and satisfaction, or prior adjudication.
Answering the two questions of the Kesolution:
First, there was no sale or sales or valid contract or contracts to sell these vessels to the plaintiffs and there was no breach of any contract by any of the plaintiffs.
Second, the payment of monies to said companies October 7, 1935, was a compromise settlement of all claims of these companies .against the United States Shipping Board and was in full satisfaction and settlement of all. claims and demands of whatsoever nature between the parties.
There was no over-reaching or advantage taken of the plaintiffs by the United States Shipping Board or any agent thereof, and the plaintiffs were fully cognizable of every step taken in the compromise settlement and agreed to, and acquiesced in, the settlement to make it final and binding. The plaintiffs, furthermore, followed this up with requests for dismissals of the suits in the Court of Claims.
It is ordered that the special findings of fact, conclusion of law, and the foregoing opinion of the court be transmitted to the Senate, in accordance with the act of March 3, 1911, 36 Stat. 1087, 1138 (Sec. 151 of the Judicial Code, Sec. 257, Title 28 of the United States Code) amending the Act of March 3, 1887, 24 Stat. 505, 507.
Jomes, Judge; Whitaker, Judge; and LittletoN, Judge, concur.
MaddeN, Judge, took no part in the decision of this ease.