**ALLOY PRODUCTS CORPORATION**

v.

**The UNITED STATES.**

No. 50187.

United States Court of Claims.
May 9, 1962.

G. A. Chadwick, Jr., Washington, D. C., for plaintiff. Frost & Towers, Washington, D. C., on the brief.

Edward L. Metzler, Washington, D. C., with whom was Asst. Atty. Gen. William H. Orrick, Jr., for defendant.

LARAMORE, Judge.

Plaintiff seeks judgment on the ground that the defendant has been unjustly enriched as a result of coercion and duress alleged to have been exercised by defendant's officials, particularly a Mr. Moore, which plaintiff claims induced its execution of the 1944 renegotiation agreement, and by virtue of a mistake of law in interpretation of the covenant against contingent fees contained in the contract. Plaintiff asks this court to exercise its equitable jurisdiction to reform the 1944 renegotiation agreement and to render judgment in behalf of petitioner in the sum of $85,000.

The defendant, by counterclaim, seeks to recover from the plaintiff $143,145.40, consisting of the total of the amounts of $37,256.91 and $105,888.49 paid by the plaintiff to one Mr. Alders in 1942 and 1943, on the ground that those amounts were not legal or proper expenses of performing the plaintiff's contracts with the defendant during those years and should not have been allowed as such expenses under the renegotiation agreements in 1942 and 1943 or in the termination settlement of plaintiff's war contracts.

Respecting plaintiff's petition, defendant maintains: (1) under the Renegotiation Act, 58 Stat. 78, the Court of Claims is without jurisdiciton to entertain suits to set aside or reform agreements entered into pursuant to that act; (2) under section 403(c) (4) of the Renegotiation Act, supra, renegotiation agreements were conclusive according to their terms, and could not be set aside, even in a proper forum, except upon "a showing of fraud or malfeasance or willful misrepresentation of a material fact."

While we believe there is no doubt that the exclusive jurisdiction is within the Tax Court to set aside or reform agreements entered into pursuant to the Renegotiation Act, supra, another reason exists which compels this court to hold that plaintiff cannot recover on its petition. Section 403(c) (1) of the Renegotiation Act, supra, provides for the making of agreements respecting renegotiation of war contracts. Section 403(c) (4) provides:

"For the purposes of this section the Board may make final or other agreements with a contractor or subcontractor for the elimination of excessive profits and for the discharge of any liability for excessive profits under this section. Such agreements may contain such terms and conditions as the Board deems advisable. Any such agreement shall be conclusive according to its terms; and except upon a showing of fraud or malfeasance or a willful misrepresentation of a material fact, (A) such agreement shall not for the purposes of this section be reopened as to the matters agreed upon, and shall not be modified by any officer, employee, or agent of the United States, and (B) such agreement and any determination made in accordance therewith shall not be annulled, modified, set aside, or disregarded in any suit, action, or proceeding. [p. 84]"

In the instant case an agreement was entered into between plaintiff and the District Price Adjustment Section at Chicago, Illinois, acting on behalf of the War Contracts Price Adjustment Board, as provided for in section 403(c) (1), supra.

Thus we are called upon to decide whether the agreement was induced by fraud or malfeasance or a willful mis-

representation of a material fact. In the absence of such a showing, of course, under the statute the agreement cannot be reopened or modified by any officer, etc., of the United States, nor could the agreement be annulled, modified, set aside, or disregarded in any suit, action, or proceeding.

The findings of the commissioner which are adopted by the court, are conclusive on the subject. It is found as a fact, following a recitation of all the proceedings and facts relating to the signing of the renegotiation agreement that the evidence summarized in the findings does not sustain a finding that plaintiff's acceptance of the 1944 renegotiation agreement was induced by duress or coercion or by malfeasance on the part of the Government's representatives at the June 1, 1945 meeting.

Plaintiff, of course, has excepted to the findings of fact. Plaintiff's argument largely is that the findings are not supported by the evidence, or that the evidence leans in another direction. In most instances, plaintiff has not pointed to an identifiable reference to the record which is provided for in Rule 46(c) of the Rules of this court. 28 U.S.C.A. However, the gravamen of plaintiff's case seems to be that Mr. Hugh D. Moore, a Government negotiator, allegedly on June 1, 1945, represented to the plaintiff that plaintiff would have to forego tax credits provided for in 26 U.S.C. § 3806 (1939 I.R.C.) (1952 Ed.), and the Renegotiation Act, supra, unless it signed the renegotiation agreement for 1944. Plaintiff contends that Moore "only misrepresented the regulation respecting tax credits," and that "this was the only misrepresentation that was needed to serve Moore's purpose at the moment." Plaintiff then says "that purpose was to force an agreement on plaintiff to which plaintiff otherwise would not have assented."

The short answer to this contention of plaintiff is that not only was plaintiff represented by competent counsel who knew or could have ascertained the provisions of the Internal Revenue Code and the Renegotiation Act, supra, but that plaintiff was well acquainted with the statutes involved. The 1942 renegotiation agreement signed by plaintiff expressly referred to section 3806 tax credits. Plaintiff's renegotiation for 1943 likewise provided for tax credits under section 3806. As a matter of fact, in each of those years such tax credits reduced the actual renegotiation refund of excess profits. Moreover, plaintiff signed the renegotiation agreement after several conferences and months of careful consideration, coupled with consultations with its attorney. Furthermore, plaintiff was well aware, long before the signing of the agreement, that Alders' fees might be totally disallowed. Therefore, it was no real surprise to plaintiff when the fees were actually disallowed.

In summary, all the details of the Renegotiation Act and regulations and the provisions of section 3806 of the Internal Revenue Act were clear and, if not known to the plaintiff, were readily obtainable. Furthermore, it seems highly unlikely that either Mr. Moore, the Government negotiator, or the District Price Adjustment Board at Chicago would willfully mislead plaintiff to its disadvantage.

■ As a matter of fact, plaintiff's concept of duress is not sustained by the decisions of this court. For instance, in the case of Fruhauf Southwest Garment Co. v. United States, 111 F.Supp. 945, 126 Ct.Cl. 51, the court held that the legal meaning of economic duress involves a step beyond mere illegality and implies that a person has been unlawfully constrained or compelled by another to perform an act under circumstances which prevent the exercise of free will. No such showing has been made in this case.

In the case of Du Puy v. United States, 67 Ct.Cl. 348, 381, this language was used:

"* * * In the case at bar the plaintiff, during the negotiations for settlement, was represented by able attorneys, and both they and the plaintiff knew before the settlement

was signed everything that they know now. In order to successfully defend on the ground of force or duress, it must be shown that the party benefited thereby constrained or forced the action of the injured party, and even threatened financial disaster is not sufficient. * * * "

This was also true in the case at bar. Plaintiff was represented by able counsel; both he and plaintiff knew before the settlement was signed everything they know now.

■ Consequently, since we cannot ascribe any bad faith either to Mr. Moore or to the District Board, we likewise cannot charge either with malfeasance, fraud or willful misrepresentation of a material fact. In the absence of one or the other, the agreement is conclusive on the parties, and this court does not have jurisdiction to set aside or reform the agreement. Accordingly, plaintiff's petition must be dismissed.

If plaintiff did not believe that payments to Alders were violations of Article 11 of the contracts, its course was to refuse to sign the renegotiation agreement, petition the War Contracts Price Adjustment Board for review of the unilateral order which would have been issued, and possibly appeal further to the Tax Court.

The remaining question to be decided is whether or not defendant is entitled to recover on its counterclaim. The theory of defendant's counterclaim is that in 1942 and 1943 plaintiff paid contingent fees to Alders in violation of Article 11 of plaintiff's war contracts with defendant's Army Air Forces.

■ Since plaintiff has filed no reply to defendant's counterclaim, defendant's allegations were admitted and required no specific proof under Rules 15(c) and 16 of the Rules of this court. Rule 15(c) provides:

"Effect of Failure To Deny. Averments in a pleading to which a responsive pleading is required, other than those as to the amount of dam-

age, are admitted when not denied in the responsive pleading. * * * "

Rule 16(a) provides:

"Time for Answer and Reply. * * * After service on him of an answer containing a counterclaim or plea of fraud, plaintiff shall have 40 days within which to file a reply to the counterclaim or plea of fraud. * * * "

Rule 16(h) provides:

"Waiver of Defenses. A party waives all defenses and objections which he does not present either by motion as hereinbefore provided or, if he has made no motion, in his answer or reply, * * * ."

■ Unquestionably, defendant's counterclaim is such a pleading to which a responsive pleading is required. Rule 6(a) of the Rules of this court provides:

"Pleadings. There shall be a petition and an answer; and if the answer contains a counterclaim or a plea of fraud, there shall be a reply to the counterclaim or the plea of fraud. There shall be such third-party pleadings as are permitted by Rule 19. No other pleadings shall be allowed, except that the Court may order a reply to an answer, or a responsive pleading to a third-party petition or answer. [Cf. Rule 7(a), Federal Rules of Civil Procedure; Curry v. Pyramid Life Ins. Co., 8 Cir., 271 F.2d 1.]"

Unquestionably plaintiff did not, within the time specified by the rules of this court, file a reply to defendant's counterclaim, and unquestionably under Rule 16(h), supra, plaintiff has waived all defenses and objections. Unquestionably, under Rule 15(c), supra, the effect of plaintiff's failure to deny is to admit the averments of the counterclaim. (Cf. Rule 8(d), Federal Rules of Civil Procedure, 28 U.S.C.A.; Atkinson v. Atkinson, 7 Cir., 167 F.2d 793.)

The rules are clear and were not made to be broken. Courts must necessarily operate under rules, and we can find no

excuse or reason why this plaintiff should be given the right of an exception.

Plaintiff did belatedly attach a "reply" to its objections to defendant's requested findings. This was not authorized by the court. Nor is there a journal entry containing any mention of this "reply." As a matter of fact, this so-called "reply" was filed long after proof was closed and could not operate to deny allegations which are deemed, under the rules, to be admitted.

Plaintiff's attorney in the memorandum in opposition to defendant's requested findings, filed February 13, 1961, admits that a reply is necessary to the counterclaim, but seeks to excuse failure to reply by stating that he erroneously referred to the rules and thought no reply was necessary. This we do not think can be construed to relieve plaintiff of the effect of the rules. Under plaintiff's theory, we might just as well discard the rules or hold that they were intended to be meaningless.

■ In this posture we normally would have to enter judgment for defendant on its counterclaim. However, since, as we held earlier, this court has no jurisdiction over the subject matter of the petition because the renegotiation agreement was not induced by duress, etc., defendant's counterclaim must also fall. Looney v. District of Columbia, 18 Ct.Cl. 8; The Baltimore & Ohio Railroad Co. v. United States, 34 Ct.Cl. 484; Yale & Towne Manufacturing Co. v. United States, 67 Ct.Cl. 618; The First National Steamship Co., et al. v. United States, 106 Ct.Cl. 601.

While the failure of plaintiff to reply to defendant's counterclaim is not dispositive of the issue, we discuss the subject because we cannot condone the failure of plaintiff's attorney to diligently search the rules and abide by them.

For the reasons stated above, defendant's counterclaim is dismissed.

It is so ordered.

JONES, Chief Judge, and DURFEE and WHITAKER, Judges, concur.